# EXHIBIT 9

# THE
# BOOK OF ENGLISH LAW

BY EDWARD JENKS, D.C.L. (OXON.)
OF THE MIDDLE TEMPLE
BARRISTER-AT-LAW
PROFESSOR OF ENGLISH LAW AND DEAN OF THE FACULTY OF LAWS
IN THE UNIVERSITY OF LONDON
A VICE-PRESIDENT OF THE INTERNATIONAL ACADEMY
OF COMPARATIVE LAW (THE HAGUE)

BOSTON AND NEW YORK
HOUGHTON MIFFLIN COMPANY
1929

## General Principles of English Justice

1. It is one of the most conspicuous features of English justice, that all judicial trials are held in open court, to which the public have free access, and that the parties have a right to be represented, and to have their interests defended, by skilled advisers from among the barristers and solicitors described in the last preceding chapter.

This feature is so much of a common-place to the modern Englishman, that he hardly realizes its importance. But, if he will think for a moment, of the difference between the English system and those, quite common in other countries, where the proceedings are conducted in secret, and where, in criminal cases, the accused is not necessarily entitled to be represented by skilled advisers, he will hardly fail to grasp the difference. To put it shortly, the English system ensures that the enormous force of public opinion is brought to bear on the proceedings in Court, and that judge and jury are compelled to hear both sides of the case. The former appears to have been the rule in England from time immemorial; and much of the effectiveness of English public opinion, whether expressed by word of mouth or in the public prints, may be said to be due to it. Only in rare instances, of which the notorious Court of Star Chamber is the most conspicuous, has the rule been violated; and the unpopularity of such exceptions is the best proof of the value attached by the nation to the general rule. The latter feature (the necessity for hearing both sides of a case) is so essential a feature of English justice, that it is even enforced on those domestic and professional tribunals which are not Courts of Justice at all, but merely administrative bodies having quasi-judicial duties to perform. Thus, in a well-known recent case, where the committee of a social club, on a complaint by one member that another member had been guilty of conduct which rendered him unfit to remain a member of the club, expelled from the club, under rules authorizing them to do so, the member complained of, without giving him an

opportunity of rebutting the charges, the Court condemned the action of the committee as fundamentally inconsistent with the principles of justice, and awarded damages to the expelled member, though the facts on which the complaint against him was based were not disputed.

It must be admitted that the rule, that every accused person may be represented by skilled advisers, is by no means so old in English Law as the rule of open administration of justice. Down to the end of the seventeenth century, no counsel was allowed to appear on behalf of a person accused of felony at the suit of the Crown, except when a point of law arose for discussion. This was, of course, a grave blot on English justice, the origin of which it would take too long to explain. Suffice it to say, that the first effort to remove it was due to the magnanimous attitude of King William III, who, in spite of the fact that he was peculiarly exposed to the attacks of traitors, gave his consent to the Treason Act of 1695, which allowed persons accused of High Treason to be defended by counsel. But the rule was not made universal till 1836. The exceptions to the rule of open court are very rare, consisting practically only of three cases: (1) where children are, unhappily, required to give evidence in cases involving decency or morality; (2) where the case involves 'secret processes' (i.e. trade secrets unprotected by patent rights), which would disappear if they were discussed in public; and (3) in prosecutions under the Official Secrets Acts, where the publication of the evidence, or statements made in the course of the proceedings, would be prejudicial to the national safety. It is remarkable that though, in the year 1908, an Act passed for the punishment of incest laid it down that all proceedings under it should be held *in camera*, i.e. secret, yet that, owing to the strong representations of the judges that the suppression of public trials for this offence, revolting as they necessarily were, actually resulted in members of the classes specially affected not knowing that such practices were criminal, the secrecy clause was repealed in 1922.

Case 1:24-cv-00943-LAF-JGM Document 14-9 Filed 12/02/24 Page 4 of 4