# EXHIBIT 16

# SOCIAL TREATMENT IN PROBATION AND DELINQUENCY

*Treatise and Casebook for Court Workers,*
*Probation Officers, and Other*
*Child Welfare Workers*

Pauline V. Young, Ph.D.
Research Sociologist and Lecturer

*Foreword by*

ROSCOE POUND, Ph.D., LL.D.
Visiting Professor of Law
The University of California at Los Angeles

SECOND EDITION

New York Toronto London
McGRAW-HILL BOOK COMPANY, INC.
1952

Case 1:24-cv-00943-LAF-JGM Document 14-16 Filed 12/02/24 Page 2 of 4

# FOREWORD TO THE FIRST EDITION

As one, not unnaturally, compares Dr. Young's book with two earlier works in somewhat the same field, namely, Miss Richmond's *Social Diagnosis* (1917) and Southard and Jarrett's *The Kingdom of Evils* (1922) he cannot fail to be struck with the great progress in the scope and method and in the fuller understanding of the purposes and possibilities of social work which has been achieved in the past two decades. No less striking is the development of cooperation of agencies of every description with each other and with courts and probation officers and the agencies of prosecution and penal treatment. If that cooperation, in many places and some particulars at least, falls short of what is desirable, one need but recall the American tradition, one might almost say the American habit, of official noncooperation with other officials and governmental agencies, not to speak of habitual noncooperation with extragovernmental agencies, characteristic of the nineteenth century, to perceive a radical and encouraging change.

Miss Richmond's classical book had to do chiefly with the technique of social investigation. Dr. Southard, who came in contact with social work as director of the Boston Psychopathic Hospital, was concerned with diagnosis for social therapy. He sought to determine what agencies to employ for a particular case, as it came to him as a result of some mental or nervous disturbance, finding five major types of evil to be dealt with: diseases and defects of mind and body (calling for cure), educational deficiencies and misinformation (calling for teaching), vices and bad habits (calling for training), legal entanglements (calling for counsel), and poverty and other forms of resourcelessness (calling for aid). Today diagnosis must go forward to much more detail. Ultimately very likely we must ask whether, for example, a particular child presents a case for a court with a probation officer and detention home, or for a social clinic, or for a child guidance clinic with a psychiatrist, or for an institute of social relations, or for some agency looking into the social economic forces behind it.

Much as the progress has been, social case diagnosis is not yet developed. Obviously the process is complex and as things are is largely tentative. There is a complex both of symptoms and of causa-



Case 1:24-cv-00943-LAF-JGM Document 14-16 Filed 12/02/24 Page 3 of 4

If one is inclined to minimize the need of systematic administrative supervision of juvenile probation, let him consider one item. Child placement involves administrative authority over one of the most intimate and cherished of human relations. The powers of the Star Chamber were a trifle in comparison with those of our juvenile courts and courts of domestic relations. The latter may bring about a revolution as easily as did the former. It is well known that too often the placing of a child in a home or even in an institution is done casually or perfunctorily or even arbitrarily. Moreover effective preventive work through these courts requires looking into much more than the bad external conditions of a household, such as poverty or neglect or lack of discipline. Internal conditions, a complex of habits, attitudes, and reactions, may have to be dealt with and this means administrative treatment of the most intimate affairs of life. Even with the most superior personnel, these tribunals call for legal checks.

That individualization may be thought of ultimately as part of a larger question of prevention does not relieve us of the task of making the best of what we have been doing toward individualization. Whatever measures may be devised in the end toward prevention of crime, individual adjustment through case work has been shown to be immediately practicable. Very likely it will always be necessary. One of the chief preventive agencies is the police, and special police technique for handling juvenile cases has been urged. But we must proceed slowly here. It is a grave question whether we can ask for more than enlightened common sense. We cannot reasonably expect the police to do social work or to do the work of child welfare agencies. Any considerable development of the preventive side of the policeman's office adds to the already heavy burden of difficulties involved in making the police adequate to its varied tasks in the American city of today.

At common law the home was relied upon as a chief agency of social control. The parent, or the master in case of apprenticed children, was thought of as having the duties of the crown as *parens patriae* devolved upon him. The internal discipline of the household was privileged. The father or master had the authority of the law behind him. It was over him only in case he exceeded his privilege. Obviously the legal order today is under strain from what may be called the increasing secularization of social control. It is struggling with difficulties of transition from a control recognized and backed up by the law to a control by and through the law immediately. The law has largely to act in gross. Hence when anything is committed to the law there is a tendency to deal with it in the traditional legal