UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:24-cv-943

| | | |
|---|---|---|
| CIVIL RIGHTS CORPS, | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| JUDGE DORETTA L. WALKER, in her | ) | No. 1:24-cv-943 |
| official capacity, and CLARENCE F. | ) | |
| BIRKHEAD, in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF DEFENDANT
## SHERIFF BIRKHEAD'S MOTIONS TO DISMISS

1

# Table of Contents

I. INTRODUCTION_____ 8

II. STATEMENT OF FACTS_____ 8

III. STANDARD OF REVIEW_____ 10

    A. 42 U.S.C. § 1983_____ 10

    B. Failure to State a Claim_____ 10

    C. Lack of Subject Matter Jurisdiction_____ 11

IV. ARGUMENT_____ 11

    A. PLAINTIFF'S ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH SUBJECT MATTER JURISDICTION_____ 11

        1. Defendant Birkhead Has Absolute Quasi-Judicial Immunity, Depriving this Court of Subject Matter Jurisdiction_____ 11

        2. Plaintiff Cannot Demonstrate Standing_____ 14

    B. PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED _____ 15

        1. Plaintiff Does Not Allege Any Action By, or Attributable To, Defendant Birkhead Which Caused Plaintiff's Alleged Injury_____ 15

        2. Plaintiff Has Failed to Allege Facts Establishing That a Qualified First Amendment Right to Access Dependency Court Exists_____ 18

            a. Caselaw Has Not Established a Right to Access Dependency Court nor Any Other Similarly Confidential Courts _____ 18

            b. Dependency Court Is Distinguishable From Courts With an Established Presumptive Public Right of Access_____ 20

            c. Plaintiff Fails to State a Claim Under the Common Law Right of Access_____ 22

            d. Plaintiff Fails to State a Claim Under the First Amendment Right of Access_____ 23

                i. Plaintiff's Claim of a First Amendment Right Fails the Experience Test_____ 24

2

                    ii. Plaintiff's Claim of a First Amendment Right Fails the
                    Logic Test _____ 25

V. CONCLUSION_____ 26

## Table of Authorities

**FEDERAL CASES**                                                                       **Page(s)**

*AFSCME Md. Council 3 v. State*,
    61 F.4th 143 (4th Cir. 2023) _____ 10

*Anderson v. Dunn*,
    19 U.S. 204, 227 (1821)_____ 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)_____ 10

*Battle v. Whitehurst*,
    831 F. Supp. 522 (E.D. Va. 1993)_____ 14

*Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*,
    520 U.S. 397 (1997)_____ 18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)_____ 10

*Bellotti v. Baird*,
    443 U.S. 622 (1979)_____ 25

*Bosely v. Lemmon (In re Mills)*,
    287 F. App'x 273 (4th Cir. 2008)_____ 12

*Bush v. Rauch*,
    38 F.3d 842 (6th Cir. 1994)_____ 14

*Carter v. Morris*,
    164 F.3d 215 (4t Cir. 1999)_____ 16

*City of Canton v. Harris,*
    489 U.S. 378 (1989)_____ 17, 18

Connick v. Thompson,
    563 U.S. 51 (2011)_____ 16

Coverdell v. Dep't of Soc. & Health Servs.,
    834 F.2d 758 (9th Cir. 1987)_____ 14

Erickson v. Pardus,
    551 U.S. 89 (2007)_____ 10

Case 1:24-cv-00943-WO-JLW   Document 44   Filed 01/13/25   Page 4 of 30

Franklin v. City of Charlotte,
    64 F.4th 519, 535-36 (4th Cir. 2023)_____ 16

*Henry v. Farmer City State Bank*,
    808 F.2d 1228 (7th Cir. 1986)_____ 14

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*,
    892 F.3d 613 (4th Cir. 2018)_____ 14

*Lockhart v. Hoenstine*,
    411 F.2d 455 (3d Cir. 1969)_____ 14

*Lytle v. Doyle*,
    326 F.3d 463 (4th Cir. 2003)_____ 16

*Manion v. N.C. Med. Bd.*,
    693 F. App'x 178 (4th Cir. 2017)_____ 11

*Mays v. Sudderth*,
    97 F.3d 107 (5th Cir. 1996)_____ 14

*McNair v. E. Dist. NC Fed. Officials*,
    No. 5:13-CV-00733-FL (E.D.N.C. Oct. 30, 2013)_____ 14

*Moody v. NetChoice, LLC*,
    603 U.S. 707 (2024)_____ 25

*Monell v. New York City Dept. of Social Servs.*,
    436 U.S. 658 (1978)_____ 16,17

*Nixon v. Warner Commc'ns, Inc.*,
    435 U.S. 589 (1978)_____ 19

*Patterson v. Spence*,
    No. 5:23-CT-3250-FL (E.D.N.C. Feb. 20, 2024)_____ 15

*Patterson v. Von Riesen*,
    999 F.2d 1235 (8th Cir. 1993)_____ 14

*Pembaur v. Cincinnati*,
    475 U.S. 469 (1986)_____ 16

*Pfizer Inc. v. Synthon Pharm., Inc.*,
    No. 1:21CV157 (M.D.N.C. Jan. 23, 2024)_____ 22

*Polk County v. Dodson*,
    454 U.S. 312 (1981)_____ 17

*Press-Enterprise Co. v. Superior Ct.*,
    478 U.S. 1, 8 (1986)_____ 24

*Roth v. King*,
    449 F.3d 1272 (2006)_____ 15

*Rushford v. New Yorker Mag., Inc.*,
    846 F.2d 249 (4th Cir. 1988)_____ 22

*Schleifer v. City of Charlottesville*,
    159 F.3d 843 (4th Cir. 1998)_____ 25

*Slotnick v. Garfinkle*,
    632 F.2d 163 (1st Cir. 1980)_____ 14

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)_____ 14

*West v. Atkins*,
    487 U.S. 42 (1988)_____ 10

*Valdez v. Denver*,
    878 F.2d 1285 (10th Cir. 1989)_____ 14

**STATE CASES**

*In re Burrus*,
    275 N.C. 517, 529 (1969)_____ 25

**FEDERAL RULES AND REGULATIONS**

Federal Rule of Civil Procedure 5.1_____ n.2

Federal Rule of Civil Procedure 12(b)(1)_____ 8, 11, 26

Federal Rule of Civil Procedure 12(b)(6)_____ 26

42 Code of Federal Regulations § 2.63(a)(1) (2024)_____ 21

**LOCAL RULES**

Local Rule of Civil Procedure 7.3_____ 8

Local Rule of Civil Procedure 83.6_____ n.2

6

**FEDERAL STATUTES**

42 U.S.C. § 1983_____ 10, 15–18

**STATE STATUTES**

N.C. Gen. Stat. § 1-72.1(f) (2001)_____ 22, n.2

N.C. Gen. Stat. § 7B-302 (2021)_____ 22

N.C. Gen. Stat. § 7B-601 (1999)_____ 13, 20-22

N.C. Gen. Stat. § 7B-602 (2021)_____ 21

N.C. Gen. Stat. § 7B-801 (2011)_____ 9, 13, 18, 22, 24, n.2

N.C. Gen. Stat. § 7B-901 (2021)_____ 21

N.C. Gen. Stat. § 7B-2901 (2021)_____ 9, 22

An Act to Provide a Unified Juvenile Code, N.C. Laws 1979-815 (1979)_____ 25

**OTHER AUTHORITIES**

N.C. Clerks of Superior Court R. of Record Keeping, Rule 12.1_____ 20

Defendant BIRKHEAD, by and through undersigned counsel, submits this memorandum in support of his Motions to Dismiss pursuant to Local Rule 7.3 and Fed. R. Civ. P. 12(b)(1) and (6), for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

## I.   INTRODUCTION

Plaintiff's Complaint contends that its staff and members of the public have been removed from dependency court when Defendant Judge Walker ordered the courtroom closed and Defendant Birkhead's employees enforced those orders.  Plaintiff seeks declaratory, preliminary, and permanent injunctive relief against Defendant Birkhead and Defendant Walker.  Plaintiff prays the Court (1) declare the existence of a new Constitutional right: a "First Amendment presumption of public access to dependency proceedings" Complaint, Prayer A; (2) specify a process and criteria for the court to follow prior to closing court; and (3) impose on Defendant Birkhead's deputies the responsibility to conduct a legal review of all judicial orders to close dependency court prior to enforcing them.

## II.  STATEMENT OF FACTS

In Durham County two judges hear dependency cases each month; one is Defendant Walker.  Complaint, Paragraph 26. Deputy sheriffs act as bailiffs and general security for the courthouse, including Defendant Walker's courtroom.  *Id.*, Paragraph 14.  Defendant Walker has ordered certain proceedings closed and per those orders Deputy sheriffs escorted Plaintiff's attorneys, staff, and other members of the public out of Defendant Walker's courtroom and posted "closed" courtroom notices.  *Id.*  Defendant Walker sometimes permitted parents, attorneys, social workers, family members, and potential guardians who had other business before the court to remain.  *Id.*, Paragraph 27.  Twelve of Plaintiff's eighty-four allegations are against Defendant

8

Birkhead. *Id.*, Paragraphs 1, 7, 14, 23, 25, 27, 28, 29, 30, 33, 81, 83, and Prayers B and C. Plaintiff alleges that Defendant Birkhead's deputies "enforce the unconstitutional courtroom exclusion orders, such as by patrolling the courtroom to ascertain the identity of members of the public who are present, including [Plaintiff]; by escorting [Plaintiff] out of the courtroom; and by hanging a 'CLOSED HEARING' sign on the courtroom door after [Plaintiff] personnel are excluded," even though "[Plaintiff] attorneys and staff had done nothing to disrupt court proceedings," *Id.*, Paragraph 27; that "law students and other advocacy groups" have been escorted out of the courtroom, *Id.*, Paragraph 28; and that "other individuals who were unaffiliated with the particular proceedings [were] permitted to remain," *Id.*, Paragraph 33. Plaintiff alleges that "some members of the public were permitted to remain after [Plaintiff was] excluded," *Id.*, Paragraph 1, but that Plaintiff has been able to attend dependency proceedings online "because it was not apparent to the judge or attorneys that [Plaintiff] staff were listening to the proceedings," *Id.*, Paragraph 30.

In North Carolina, dependency proceedings are primarily governed by Chapter 7B of the North Carolina General Statutes (hereinafter "Juvenile Code"). Dependency proceedings are presumed to be open, but may be closed in accordance with N.C.G.S. § 7B-801 which requires the Court to consider the following factors before making such a decision:

> **(1)** The nature of the allegations against the juvenile's parent, guardian, custodian or caretaker;
> **(2)** The age and maturity of the juvenile;
> **(3)** The benefit to the juvenile of confidentiality;
> **(4)** The benefit to the juvenile of an open hearing; and
> **(5)** The extent to which the confidentiality afforded the juvenile's record pursuant to G.S. 132-1.4(l) and G.S. 7B-2901 will be compromised by an open hearing.

N.C. Gen. Stat. § 7B-801 (2011). Per § 7B-801(b), no closure may be ordered over the objection of the juvenile. *Id.*

Plaintiff makes no allegation that Defendant Walker's orders violated the requirements of N.C.G.S. § 7B-801, or that this statute is unconstitutional. None of the allegations claim the

9

deputies acted of their own volition or outside of judicial orders when asking individuals to leave, escorting them out, or placing a sign on the door.

Plaintiff prays that the Court require Defendant Birkhead's deputies refuse to enforce judicial "directives to close dependency proceedings that were issued without notice, an opportunity to be heard, consideration of alternatives, and reviewable findings explaining why totally excluding the public is necessary to meet a compelling government interest, or from implementing his own unconstitutional policies and practices." Complaint, Prayer C.

## III. STANDARD OF REVIEW

### A. 42 U.S.C. § 1983:

Plaintiff claims, pursuant to 42 U.S.C. § 1983, that Defendant Birkhead has violated Plaintiff's qualified right of access to dependency court. Plaintiff must prove two essential elements of a § 1983 claim: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

### B. FAILURE TO STATE A CLAIM:

"To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *AFSCME Md. Council 3 v. State*, 61 F.4th 143, 148 (4th Cir. 2023) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). The district court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Legal conclusions" and "conclusory statements" do not suffice as allegations. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Id.*

10

C. **LACK OF SUBJECT MATTER JURISDICTION:**

"A district court should dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (internal quotation marks omitted). *Manion v. N.C. Med. Bd.*, 693 F. App'x 178, 180 (4th Cir. 2017).

## IV. ARGUMENT

### A. PLAINTIFF'S ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH SUBJECT MATTER JURISDICTION

#### 1. Defendant Birkhead Has Absolute Quasi-Judicial Immunity, Depriving this Court of Subject Matter Jurisdiction.

Defendant Birkhead is entitled to absolute quasi-judicial immunity when his deputies follow facially valid orders given by a presiding judge to close court. North Carolina law provides: "[t]he sheriff . . . is the only officer who is also responsible for the courts of the State, and acting as their bailiff and marshal." N.C. Gen. Stat. § 17E-1 (2021). The bailiffs, as employees of the Sheriff are required by state law to execute judicial orders as directed: "[w]henever the sheriff may be required to . . . execute any . . . order . . . or to do any other act, he shall be bound to do so in like manner as upon process issued to him, and shall be equally liable in all respects for neglect of duty." N.C. Gen. Stat. § 162-16 (1971).

It is well-established that the presiding judge has authority to determine who may remain or be excluded from the courtroom. *See Anderson v. Dunn,* 19 U.S. 204, 227 (1821), and N.C. Gen. Stat. §15A-1035 (1977). Therefore, bailiffs comply with N.C.G.S. § 162-16 by acting as extensions of sitting judges when they close court proceedings as ordered.

While there are no reported Fourth Circuit cases with the exact factual scenario at issue, the Fourth Circuit Court of Appeals did consider the issue of extending quasi-judicial immunity to

law enforcement officers and rendered an unpublished opinion, which has been followed by other Fourth Circuit district courts. In *Bosely v. Lemmon (In re Mills)*, the Court considered whether law enforcement officers were entitled to quasi-judicial immunity when the officers executed a warrant in a manner which resulted in a person's death. The Court first confirmed that quasi-judicial immunity can extend to law enforcement officers executing a judicial order:

> Judges performing judicial acts within their jurisdiction are entitled to absolute immunity from civil liability claims. . . . And such immunity extends to the judge's subordinates for "functions that are more administrative in character [that] have been undertaken pursuant to the [judge's] explicit direction." The basis for extending the immunity in these situations is to prevent a judge's subordinates from becoming a "lightning rod for harassing litigation" challenging decisions for which the judge is immune.

*Bosely v. Lemmon (In re Mills)*, 287 F. App'x 273, 279 (4th Cir. 2008) (citations omitted).

The Court provided additional guidance for the contours of quasi-judicial immunity in determining that it did not apply in that case due to allegations the officers used excessive force:

> Here, Mills's alleged unconstitutional execution of the order was not specifically authorized by the judicial officer who issued the warrant. Nor does the complaint seek to hold Mills liable for a quasi-judicial decision. Rather, the decision challenged in the complaint is the defendants' decision of how to execute the warrant. Thus, the state defendants clearly are not entitled to absolute quasi-judicial immunity. *See Richman,* 270 F.3d at 435-36 (holding that officers ordered to restrain man in courtroom were not entitled to absolute quasi-judicial immunity from suit alleging the officers used excessive force in restraining the man); *Bd. of County Comm'rs,* 909 F.2d at 405 (holding that officers executing arrest warrant were not entitled to absolute quasi-judicial immunity from suit alleging the officers used excessive force and provided constitutionally inadequate medical attention in executing the warrant).

*Bosely v. Lemmon (In re Mills)*, 287 F. App'x 273, 279-80 (4th Cir. 2008).

In the case at hand, Plaintiff alleges the bailiffs enforced facially valid orders of a sitting judge in the management of her courtroom. All relevant allegations reference open court sessions with Defendant Walker presiding, and as such, issuing orders from the bench: Plaintiff "was ordered out of the courtroom," Complaint, Paragraph 27; "[a] Deputy Sheriff facilitated the

removal . . ." and "[bailiffs] enforce the unconstitutional courtroom exclusion orders," Complaint Paragraph 33. Defendant Birkhead has a "policy and practice of enforcing the exclusion orders." Complaint Paragraph 33. Plaintiff "was able to attend these virtual hearings only because it was not apparent to the judge or attorneys that [Plaintiff] staff were listening to the proceedings," Paragraph 30, indicating that Defendant Walker and attorneys determine whether to close court; the bailiffs employed by Defendant Birkhead merely follow judicial orders.

No allegations claim the deputies acted of their own volition or outside of judicial orders. As noted *supra*, II, N.C.G.S. § 7B-801 provides the mechanism for a dependency court judge to close dependency proceedings. Therefore, a judge's order directing a bailiff to close dependency proceedings is a reasonable order within the Court's authority. There are no allegations that the bailiffs exceeded the scope of the Defendant Walker's order or committed some separate constitutional tort in enforcing it. There are no allegations that the bailiffs exercised any discretion in determining when or how to follow the order of the sitting judge. When considering the facts in a light most favorable to Plaintiff, all they allege is that each bailiff acted as an extension of the judge in closing the courtroom and escorting Plaintiff's personnel and members of the public out.

The Eastern District of North Carolina, following *In re Mills,* held that quasi-judicial immunity protects judicial officers complying with a judge's explicit direction:

> Insofar as [Plaintiff] alleges that this Court's issuance and enforcement of the pre-filing injunction has deprived him of his rights, Plaintiff's suit is barred. *See In re Mills*, 287 F. App'x 273, 279 (4th Cir. 2008). "Judges performing judicial acts within their jurisdiction are entitled to absolute immunity from civil liability claims." *Id.; see also Dalenko v. Stephens*, 917 F. Supp. 2d 535, 549-50 (E.D.N.C. 2013). This immunity extends to judicial officers (and therefore "Eastern District Federal Officials") for administrative actions "undertaken pursuant to the [judge's] explicit direction." *Mills*, 287 F. App'x at 279 (quoting *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992)). The doctrine encompasses judicial officers in such circumstances due to "the 'danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts[.]' "

13

*McNair v. E. Dist. N.C. Fed. Officials*, No. 5:13-CV-00733-FL (E.D.N.C. Oct. 30, 2013) (Magistrate Judge's recommended order adopted by Judge). *See also Battle v. Whitehurst*, 831 F. Supp. 522, 528 (E.D. Va. 1993) (extending absolute judicial immunity to clerks carrying out a judicial order).

Defendant Birkhead and his employee bailiffs are entitled to quasi-judicial immunity as judicial officers acting as an extension of Defendant Walker. Any other conclusion conflicts with the decision in *In Re Mills*, and the holdings of those circuits which have considered the extension of judicial immunity. *See Slotnick v. Garfinkle*, 632 F.2d 163, 166 (1st Cir. 1980), *Lockhart v. Hoenstine*, 411 F.2d 455, 460 (3d Cir. 1969), *Mays v. Sudderth*, 97 F.3d 107, 113-14 (5th Cir. 1996), *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994), *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986), *Patterson v. Von Riesen*, 999 F.2d 1235, 1240 (8th Cir. 1993), *Coverdell v. Dep't of Soc. & Health Servs*., 834 F.2d 758, 765 (9th Cir. 1987), *Valdez v. Denver*, 878 F.2d 1285, 1288 (10th Cir. 1989).

### 2. Plaintiff Cannot Demonstrate Standing

"To possess standing, a plaintiff must sufficiently allege the three elements identified by the Supreme Court. That is, a plaintiff must allege that they have: '(1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 619–20 (4th Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).

Plaintiff cannot satisfy any of the required elements, much less all of them. Because Plaintiff does not have a First Amendment right to access dependency courts, *see infra*, IV.B.2.a, its exclusion from dependency proceedings does not constitute an injury-in-fact, and Plaintiff has

14

alleged no other injuries. Additionally, Plaintiff cannot demonstrate that its alleged injuries were caused by Defendant Birkhead. *See infra*, IV.B.1. Therefore, Plaintiff, lacking an injury-in-fact and causation, does not have standing to bring its claim in Federal Court on matters related to state laws.

Plaintiff's action is for initial declaratory relief, so Plaintiff is clearly prohibited from seeking either preliminary or permanent injunctive relief against Defendant Walker until a declaratory decree has been entered and then violated. Section 1983 provides, in part: "…in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. . . ." 42 U.S.C.S. § 1983 (1996).

Plaintiff cannot avoid the plain prohibition on obtaining injunctive relief against a judge by instead obtaining the prohibited injunction against the only authority capable of enforcing the judge's orders. To hold otherwise would effectively allow the prohibited injunction against Defendant Walker. Additionally, Defendant Birkhead is entitled to absolute quasi-judicial authority, *see supra,* IV.A.1, and afforded the same protection as Defendant Walker. Therefore, Plaintiff's claim seeking injunctive relief is not ripe and cannot be redressed as requested in its prayer for relief. *See Roth v. King,* 371 449 F.3d 1272, 1286-87 (2006); *see also Patterson v. Spence,* No. 5:23-CT-3250-FL (E.D.N.C. Feb. 20, 2024). Plaintiff has failed to demonstrate, as a matter of law, that this court has subject matter jurisdiction over the claim.

**B. PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

**1. Plaintiff Does Not Allege Any Action By, Or Attributable To, Defendant Birkhead Which Caused Plaintiff's Alleged Injury.**

Plaintiff has made no allegations that Defendant Birkhead was present at any of the court sessions, nor that he took any direct action causing Plaintiff's alleged injury. Plaintiff's allegations against Defendant Birkhead are based solely on the actions of his bailiffs in complying with court orders and Plaintiff's assertion that deputies honoring facially valid court orders constitutes a pattern or practice of unconstitutional conduct. These are inadequate to state a claim for relief against Defendant Birkhead under 42 U.S.C. § 1983. According to seminal case *Monell v. Department of Social Services* and its progeny:

> A municipality or other local government may be liable under this section if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. See *Monell* v. *New York City Dept. of Social Servs.*, 436 U.S. 658, 692, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). But, under § 1983, local governments are responsible only for "their *own* illegal acts." *Pembaur* v. *Cincinnati*, 475 U.S. 469, 479, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) (citing *Monell*, 436 U.S., at 665-683, 98 S. Ct. 2018, 56 L. Ed. 2d 611). They are not vicariously liable under § 1983 for their employees' actions.

*Connick v. Thompson*, 563 U.S. 51 (2011).

The Fourth Circuit has further defined the standards for establishing a §1983 claim against a governmental entity:

> Though establishing a § 1983 claim against a municipality is difficult, we have recognized four ways a plaintiff may accomplish that task: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citing *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). No matter which of these paths a plaintiff takes, the "official policy" itself must "inflict[]" the alleged injury for the municipality to be liable under § 1983. *Monell*, 436 U.S. at 694.

*Franklin v. City of Charlotte*, 64 F.4th 519, 535-36 (4th Cir. 2023).

Plaintiff makes no allegations that Defendant Birkhead had an express policy (the first way). State law requires bailiffs to execute presiding judges' orders, *see supra*, IV.A.1., and Plaintiff has not alleged that Defendant Sheriff has authority as policymaker to create policies that

16

exclude individuals from a courtroom or was otherwise involved in decisions to exclude Plaintiff from dependency proceedings (the second way). Plaintiff makes no allegations that Defendant Birkhead failed to properly train the bailiffs (the third way). Plaintiff appears to be trying to allege a widespread practice that constitutes the force of law (the fourth way). However, the pleadings are entirely inadequate.

Plaintiff rests its § 1983 claim on allegations that Defendant Birkhead's deputies "enforced local policy and court directives," Complaint, Paragraph 14, and that Defendant Birkhead's "policy and practice of enforcing the exclusion orders" caused Plaintiff's alleged injury (*Id.* Paragraph 83).

Plaintiff does not allege that the Sheriff had some independent policy, or that his personnel independently chose to exclude the Plaintiff's personnel and other members of the public from dependency proceedings, only that the bailiffs complied with Defendant Walker's explicit orders to close the courtroom to certain persons pursuant to a broad policy of "enforc[ing] local policy and court directives." This is completely inadequate to make a *Monell* claim against a governmental entity such as Defendant Birkhead in his official capacity. To successfully allege governmental liability under *Monell*, the Plaintiff must make allegations showing "there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Furthermore, consistent with the fact that §1983 claims require more than mere negligence (either intentional conduct or deliberate indifference) a "municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation." *City of Canton*, 489 U.S. at 388-89 (quoting *Monell*, 436 U.S., at 694, and *Polk County v. Dodson*, 454 U.S. 312, 26 (1981). The policy in question must itself be the proximate cause of the constitutional injury claimed, not simply a link in the chain.

Beyond conclusory allegations in Paragraphs 14 and 83, no clear allegations support a finding that Defendant Birkhead or his deputies deliberately or willfully subscribed to a policy or

17

practice of excluding certain individuals from specific courtrooms. All Plaintiff alleged is that Defendant Birkhead's bailiffs follow state law: they close dependency proceedings when directed to do so by the presiding courtroom judge and keep dependency proceedings open, allowing Plaintiff to remain in the courtroom when the presiding courtroom judge has not ordered courtroom closure. Complaint, Paragraph 30. If Plaintiff has suffered a constitutional violation (which Defendant Birkhead disputes) when dependency proceedings are closed to the public, Plaintiff cannot show that it was caused by bailiffs complying with N.C.G.S. § 162-16 and executing a judicial order, a decision entrusted to the judge's discretion by NCGS 7B-801, as directed.

Even when the allegations and reasonable inferences are considered in the light most favorable to Plaintiff, the allegations are wholly insufficient to state a claim of an unconstitutional practice by the Sheriff's Office under 42 U.S.C. § 1983. Plaintiff has not met the "rigorous standards of culpability and causation [that] must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 405 (1997). Nor has Plaintiff made allegations consistent with the requirement of *Canton* that the alleged pattern or practice be the moving force behind the claimed violation. Plaintiff has failed to state a claim upon which relief can be granted.

## 2. Plaintiff Has Failed to Allege Facts Establishing That a Qualified First Amendment Right to Access Dependency Court Exists.

### a. Caselaw Has Not Established a Right to Access Dependency Court Nor Any Other Similarly Confidential Courts.

Defendant Birkhead acknowledges that the public has a qualified right of access to courts, but no such right has been extended to dependency proceedings, nor should it be. The United States Supreme Court has not addressed the public's right of access to civil courts but has indicated that "[t]here is no reason why, consistently with due process, a State cannot. . . provide and. . .

improve provision for the confidentiality of records of police contacts and court action relating to juveniles." *In re Gault,* 387 U.S. 1, 25 (1967). Additionally:

> [T]he common-law right of inspection has bowed before the power of a court to insure that its records are not "used to gratify private spite or promote public scandal" through the publication of "the painful and sometimes disgusting details of a divorce case." *In re Caswell*, 18 R. I. 835, 836, 29 A. 259 (1893) (citations omitted).

*Nixon v. Warner Commc'n*s, 435 U.S. 589, 598 (1978).

The Fourth Circuit has extended a right of public access to civil cases but has not addressed a right of access to open court proceedings in some civil matters that are otherwise confidential, such as adoption proceedings or proceedings to determine incompetence, but has noted that "in some cases the general presumption of open trials--including identification of parties and witnesses by their real names--should yield in deference to sufficiently pressing needs for party or witness anonymity. . . in the trial court['s] discretion, which is then subject to appellate review only for "abuse". *James v. Jacobson,* 6 F.3d 233, 242 (4th Cir. 1993) (in consideration of pseudonyms). Cases involving national security law demonstrate that it is possible for a court to hear information so sensitive that there is no right of public access. *See In re Release of Records*, 526 F.Supp 2d 484 (2007), (no right to Foreign Intelligent Surveillance Court records).

Plaintiff alleges the existence of a long history of open access to these proceedings, but those allegations, (although not cited as being upon information and belief) are attributed to external sources which are hearsay.[1] Plaintiff further ignores the statutes concerning dependency proceedings in North Carolina, and other states, as well as cases which recognize that certain

---

[1] Complaint at Paragraphs 38 ("Records show that proceedings involving minors and the state's intervention in their care were open to the public both in English Chancery court and in early American courts." (no citation)), 39 ("The Cook County juvenile court, which at the time had jurisdiction over both delinquency and dependency cases, was established in 1899 as a presumptively open court." (no citation)), and 40–41.

categories of cases, with similarities to dependency cases, that do not have a recognized right of access under the First Amendment.

Defendant Birkhead submits that neither the common law nor the First Amendment guarantee a public right of access to dependency court because of the involvement of minors and the sensitive and statutorily confidential nature of the proceedings. If, however, the court determines that there is a right of access, the common law right is a more appropriate application than the First Amendment right of access. Before applying either test, the Court must consider the characteristics of dependency proceedings.

### b. Dependency Court Is Distinguishable from Courts with an Established Presumptive Public Right of Access.

Dependency court, a unique civil court, has characteristics unlike other courts that have a presumptive public right of access under the common law or First Amendment "logic and experience" test. Unlike criminal courts, the purpose of dependency court is not to protect the public or punish individuals. *See* N.C. Gen. Stat. §7B-100 (2003). Unlike criminal courts and most civil courts, where the proceedings hinge upon allegations against the subject of the court case, dependency proceedings examine the life circumstances of minors who are brought into court because they are victims of their parents or caregivers, not through any fault of their own. *See* N.C. Gen. Stat. Chapter 7B, Articles 1-12. The Juvenile Code requires courts to: determine whether children are abused, neglected, or dependent (focusing on the status of the juvenile, not parent); determine the best interests of adjudicated juveniles; and work toward securing them safe, permanent homes. *Id*. Dependency case titles include the juvenile's name, emphasizing the focus of the case on the child, and juveniles are parties to the action. *See* N.C. Gen. Stat. §7B-601(a), and N.C. Clerks of Superior Court R. of Record Keeping, Rule 12.1.

20

Child custody proceedings under Chapter 50 of the North Carolina General Statutes also involve minors who come before the court through no fault of their own, but under different circumstances. Minors in Chapter 50 cases usually have at least one fit and proper parent who is presumed to act in their best interests. Cases are not titled with the minor's name. The parties, who are parents or caregivers of minors, have some control over issues they bring before the court and can limit sensitive information shared in court proceedings to protect their children from public scrutiny. *See* N.C. Gen. Stat. § 50-13.1 (2024).

Dependency proceedings have state involvement, reflect federal law requirements, and permit the introduction of evidence that is inadmissible in other proceedings. Unlike other civil proceedings, parents have a right to legal representation; attorneys are court-appointed when parents cannot afford private counsel. N.C. Gen. Stat. § 7B-602 (2021). Juveniles are represented by attorneys through the North Carolina Guardian ad Litem Program ("GAL") in all cases with abuse and/or neglect allegations. N.C. Gen. Stat. § 7B-601 (1999). Parties have legal representation through the appellate process, N.C. Gen. Stat. § 7B-602 (2021), and the enormous body of appellate law (accessible to the public with names redacted) indicates that dependency court is well-scrutinized for good legal practice.

Dependency courts hear highly sensitive, often embarrassing, allegations about children who have suffered emotional, physical and sexual abuse, medical and educational neglect, and are missing healthy parental involvement, often due to family trauma, substance misuse and mental health issues. Statutorily protected educational, medical, mental health, and substance misuse treatment records and diagnoses, of both parents and children, are often admitted into evidence and discussed in open court proceedings. *See* N.C. Gen. Stat. § 7B-901 (2021). Federal statutes that protect health and substance treatment records provide exceptions to confidentiality when the information is used in dependency courts under a court order. *See, e.g.,* 42 C.F.R. § 2.63(a)(1)

(2024).  Unlike most other proceedings, files of the clerk, the Department of Social Services, and the GAL are all required to be kept confidential.  *See* N.C. Gen. Stat. §§ 7B-2901 (2021), 7B-302 (2021), and 7B-601(c) (1999).  The North Carolina State Bar requires attorney files to remain confidential absent client consent.

### c. Plaintiff Fails to State a Claim Under the Common Law Right of Access

In considering the characteristics of dependency court, *see supra*, IV.B.2.b., any presumptive right of public access to dependency proceedings should be under the common law.  The common law "does not afford as much substantive protection to the interests of the press and the public as does the First Amendment[,]" *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988), and "can be rebutted only by showing that 'countervailing interests heavily outweigh the public interests in access.'" *Doe*, 749 F.3d at 265-66 (quoting *Rushford*, 846 F.2d at 253).

The Honorable Loretta C. Biggs considered a courts access case of first impression in *Pfizer Inc. v. Synthon Pharm., Inc.,* No. 1:21CV157 (M.D.N.C. Jan. 23, 2024) and applied a common law right to access because no First Amendment right of access had previously been established.  Similarly, there is no established First Amendment right of the public to access juvenile dependency proceedings or to any other similar proceedings, such as adoptions and the same standard should apply.  If any right exists, it comes from common law and requires a balancing test to determine whether "countervailing interests heavily outweigh the public's interests in access."  *Pfizer Inc. v. Synthon Pharm., Inc.,* No. 1:21CV157 (M.D.N.C. Jan. 23, 2024) (quoting *Rushford,* 846 F.2d at 253).

Section 7B-801 and N.C.G.S §1-72.1(f) (which exempts dependency proceedings from the statutory mechanism for non-parties to access civil proceedings and court records), demonstrate the legislature's understanding that public access to dependency proceedings has limitations and

22

shows a deliberate choice to protect the privacy of the children who are the subject of these proceedings.[2]  Protecting the confidentiality of juveniles and their families during open court proceedings heavily outweighs the public's claimed interest in improving the function of dependency courts.  Complaint, Paragraph 53.  It is practically impossible to achieve the state's countervailing interests short of closing court.  Unlike appellate opinions, it is impractical to use pseudonyms in open dependency proceedings.  Calling children by a pseudonym in court strips children of their identities at a time when significant decisions are being made about their lives and does not protect the parents and juveniles in court from physical identification by court observers.

Interested members of the public can advocate for vulnerable juveniles served in dependency court by becoming GAL volunteers, foster parents, or by serving in the child fatality prevention system that examines systemic issues impacting at-risk juveniles.  *See* N.C. Gen. Stat. Chapter 7B, Article 14 (2021).  In applying the common law test where no First Amendment right has been declared, the needs of juveniles and families to maintain privacy, avoid embarrassing social media and news stories, and protect professionals involved from harassment are countervailing interests that heavily outweigh a public's interest in oversight, leading to the conclusion that there is no common law public right of access.

### d. Plaintiff Fails to State a Claim Under the First Amendment Right of Access

Even if the court applies the First Amendment "logic and experience" test, the access to dependency court proceedings should remain restricted for reasons articulated *supra*, IV.B.2.a–c,

---

[2] Although Plaintiff's Complaint does not directly challenge the constitutionality of N.C.G.S. §§ 7B-801 and 1-72.1(f), Plaintiff's demand that the First Amendment requires it, and other members of the public have a First Amendment right to attend which can only be restricted if they receive notice and the right to be heard on a closure motion and that such motion must be based on factors different from those enumerated in §7B-801, functionally does so, triggering Fed. R. Civ. Pro. 5.1 and LR 83.6.

and because it pleadings fail to satisfy either the experience of logic prongs defined in *Press Enterprise* and applied by the Fourth Circuit.

> The First Amendment's application turns on "two factors: historical tradition and the function of public access in serving important public purposes." *In re Wash. Post*, 807 F.2d at 389. This is commonly known as the "experience and logic" test. *See Press-Enter.*, 478 U.S. at 9. The first factor, historical tradition, asks whether the document or proceeding in question was traditionally open to the public. *In re Wash. Post*, 807 F.2d at 389. The second factor asks whether public access would curb "prosecutorial or judicial misconduct" and further "the public's interest in understanding the criminal justice system." *Id.*

> *United States v. Doe*, 962 F.3d 139, 146 (4th Cir. 2020) (quoting *Press-Enterprise Co.,* 478 U.S. at 9).

### i. Plaintiff's Claim of a First Amendment Right Fails the Experience Test

As shown above, North Carolina has a long and well-established statutory process establishing confidentiality for these proceedings. Contrary to Plaintiff's allegations, the majority of juvenile courts in the United States are NOT open for the public to access proceedings. The majority of states (at least 26) and the District of Columbia keep dependency court closed to the public. *See* Ala. Code § 12-15-129; Alaska Stat. § 47.10.070-47.10.090(c); Ark. Code § 9-27-325(i)(1)(A); Cal. Welf. & Inst. Code § 346; Del. Code 10 § 1063(a); D.C. Juvenile Rule 53(a)(1); Haw. Code § 571-41(b); Idaho Code § 16-1613(1); Ill. Code 705 § 405/1-5; Ky. Code § 610.070(3); La. Childrens Code Art. 661(C); Me. Code 22 § 4007(1); Miss. Code § 43-21-203(6); Mo. Code 211.171(7); N.H. Code § 169-C:14; N.M. Code § 32A-4-20(B); N.D. ST 27-20.3-13(5); Okla. Stat. 10A § 1-4-503(A)(1)(a); R.I. Code § 14-1-30; S.C. Code § 63-3-590; S.D. Code § 26-7A-36; Tenn. R. Juvenile Pro. Rule 114(a); Vt. Stat. 33 § 5110(a,b); W. Va. R Juvenile Pro. Rule 49; Wis. Code 48.299(1)(a); Wy. Code § 14-3-424(b).

North Carolina, like 19 others, has a hybrid model; dependency proceedings are presumptively open but can be closed after the required § 7B-801 analysis. Plaintiff's allegation that courts a century ago and in other countries were open to the public is irrelevant. North

24

Carolina's dependency court system did not exist as we know it today until 1979. *See* An Act to Provide a Unified Juvenile Code, N.C. Laws 1979-815 (1979). North Carolina has shielded juvenile court proceedings for over half a century: "[i]t has never been the practice in such proceedings, here or elsewhere, wholly to exclude parents, relatives or friends, or to refuse juveniles the benefit of counsel. Even so, such [delinquency] proceedings are usually conducted without admitting the public generally." *In re Burrus*, 275 N.C. 517, 529 (1969).

ii. **Plaintiff's Claim of a First Amendment Right Fails the Logic Test**

As explained above, there are significant reasons why the legislature provides confidentiality for dependency court. Courts have long recognized that cases involving juveniles require additional considerations, and the onset of the internet and social media age has created new concerns regarding its impact on juvenile mental health. See *Moody v. NetChoice, LLC, 603 U.S. 707, 713-16, 144 S. Ct. 2383, 2393 (2024), Bellotti v. Baird*, 443 U.S. 622 (1979), and *Schleifer v. City of Charlottesville*, 159 F.3d 843 (4th Cir. 1998) (demonstrating court understanding of changes in the internet era and different case considerations with minors). The public's ability to broadcast observations and opinions so widely did not exist prior to the internet age; "open court" has different ramifications in present times. Even under the "experience and logic" test, there is a compelling government interest in the protection of vulnerable children and protecting confidential documents, not otherwise available to the public, that outweighs any public right to access dependency court. Short of closing court, there are no practical ways to protect juvenile privacy in dependency hearings.

No North Carolina laws prevent parents from sharing information with whomever they choose, nor from having family members, friends, and others involved in their families' lives present in the courtroom. Concerns that Plaintiff has about a lack of information being provided to the public to create sufficient safeguards is mitigated by parents' ability to share information as

25

they choose and the public's ability to access appellate cases from dependency court. If parties suffer injury due to local rule restrictions, they can challenge the local rule through state processes and still protect juveniles from public viewing.

Even when all allegations and inferences are considered in the light most favorable to Plaintiff, it still cannot make a claim that Defendant Sheriff violated Plaintiff's First Amendment right to access dependency court because no such right exists.

## V. CONCLUSION

Plaintiff has failed to state a claim upon which relief may be granted and has failed to meet requirements to give this Court jurisdiction over the subject matter. Defendant Birkhead is entitled to absolute quasi-judicial immunity, which both immunizes him from this action and makes the requested injunctive relief unripe. Plaintiff has not demonstrated a constitutional right of access to dependency court and has suffered no injury-in-fact. Plaintiff allegations are wholly insufficient to demonstrate that Defendant Birkhead is the proximate cause of any injury. Defendant Birkhead requests that Plaintiff's complaint be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No. 1:24-cv-943

| | | |
|---|---|---|
| CIVIL RIGHTS CORPS, | ) | |
| Plaintiff, | ) | |
| | **)** | |
| vs. | ) | |
| | ) | |
| JUDGE DORETTA L. WALKER, in her | ) | No. 1:24-cv-943 |
| official capacity, and CLARENCE F. | ) | |
| BIRKHEAD, in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d), the undersigned certifies that by utilizing the word count function of Microsoft Word, the foregoing Memorandum of Law does not exceed 6,250 words, exclusive of the caption, signature lines, tables of contents and authorities, certificate of word count, and certificate of service.

This the 13th day of January, 2025.

                                    **ATTORNEY FOR SHERIFF BIRKHEAD**

                                    */s/ Curtis Massey*
                                    Curtis Massey
                                    Deputy County Attorney
                                    North Carolina State Bar No. #23627
                                    Office of the County Attorney
                                    200 East Main Street, 4th Floor
                                    Durham, North Carolina 27701
                                    T: (919) 560-0655    F: (919) 560-0719
                                    Email: curtmassey@dconc.gov

UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No. 1:24-cv-943


CIVIL RIGHTS CORPS,                    )
Plaintiff,                             )
                                       )
        vs.                            )
                                       )
JUDGE DORETTA L. WALKER, in her        )        No. 1:24-cv-943
official capacity, and CLARENCE F.     )
BIRKHEAD, in his official capacity,    )
                                       )
                Defendants.            )

---

### CERTIFICATE OF SERVICE

This is to certify that I have this date served Defendant Birkhead's Memorandum in Support of

His Motion to Dismiss by electronic mail and by sending it to the following registered users by

filing it with the court's electronic-filing system, pursuant to Rule 5(b)(2)(E) of the Federal Rules

of Civil Procedure:


*Attorneys for Plaintiff*:

Christopher J. Heaney (SBN 46095)

Law Office of Christopher J. Heaney

P.O. Box 25397

Raleigh, North Carolina 27611

Rohit K. Singla (*of counsel, pro hac vice*)

rohit.singla@mto.com

Shannon Aminirad (*of counsel, pro hac vice*)

28

shannon.aminirad@mto.com

Aditi N. Ghatlia (*of counsel, pro hac vice*)

aditi.ghatlia@mto.com

MUNGER, TOLLES & OLSON LLP

560 Mission Street

San Francisco, California 94105-2907

(415) 512-4000


Ariella H. Park (*of counsel, pro hac vice*)

Ariella.Park@mto.com

Sarah M. Pfander (*of counsel, pro hac vice*)

Sarah.Pfander@mto.com

MUNGER, TOLLES & OLSON LLP

350 South Grand Avenue, 50th Floor

Los Angeles, California 90071-3426

Telephone: (213) 683-9100

Facsimile: (213) 687-3702



*Attorney for Defendant Walker*:

Elizabeth Curran O'Brien (SBN 28885)

Special Deputy Attorney General

North Carolina Department of Justice

P.O. Box 629

Raleigh, North Carolina 27602

This the 13th day of January, 2025.

**ATTORNEY FOR SHERIFF BIRKHEAD**

*/s/ Curtis Massey*

Curtis Massey

Deputy County Attorney

North Carolina State Bar No. #23627

Office of the County Attorney

200 East Main Street, 4th Floor

Durham, North Carolina 27701

T: (919) 560-0655     F: (919) 560-0719

Email: curtmassey@dconc.gov