IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:24-cv-943

| | | |
|---|---|---|
| CIVIL RIGHTS CORPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **RESPONSE IN OPPOSITION TO** |
| | ) | **MOTION FOR PRELIMINARY** |
| JUDGE DORETTA L. WALKER, in her | ) | **INJUNCTION** |
| official capacity, and CLARENCE F. | ) | |
| BIRKHEAD, in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

Plaintiff Civil Rights Corps (CRC) seeks extraordinary relief: an injunction enjoining the bailiff from enforcing courtroom closure orders issued pursuant to N.C. Gen. Stat. § 7B-801 in juvenile abuse, neglect, and dependency ("A/N/D") proceedings. [DE 12, p. 1] The purpose of the injunction is to direct state judges to issue orders in a certain manner with particular findings. Both a federal statute and well establish case law prohibit this relief. CRC admits it is attempting to evade the federal statutory prohibition against injunctive relief against judicial officials. [DE 13, p 15] CRC does not acknowledge §7B-801, challenge its constitutionality, or contend that Judge Walker is failing to comply with it. Instead, CRC alleges that Judge Walker, by doing precisely what this North Carolina law commands, is violating CRC's First Amendment rights.

1

At the threshold, *O'Shea* and *Younger* abstention require this Court to deny CRC's motion and dismiss this case with prejudice without reaching the merits. The *O'Shea* and *Younger* abstention doctrines reject precisely this type of relief because it necessarily runs against the court and interferes with the state judiciary's decision-making in ongoing A/N/D cases. This Court should refuse to grant CRC a relief that would impact the mechanics of administering the state's A/N/D courts, notwithstanding the crafty label that CRC employed in its motion.

Even if the Court were to address the merits of CRC's claim, this motion should be denied as CRC's First Amendment claim is unlikely to succeed. There is no First Amendment right of public access to A/N/D proceedings or records. Additionally, CRC lacks standing to pursue its claims and its claims are not ripe. And to the extent CRC seeks to direct the text of A/N/D orders, Judge Walker's judicial immunity bars relief.

## STATEMENT OF FACTS

### I. NORTH CAROLINA'S JUVENILE CODE

Chapter 7B of the North Carolina General Statutes, the Juvenile Code,[1] "reflect[s] the need both to respect parental rights and to protect children from unfit, abusive, or neglectful parents." *In re J.M.*, 384 N.C. 584, 591–92 (2023). To protect

---

[1] For a thorough explanation of the North Carolina Child Welfare System, *see* Sara DePasquale, "Abuse, Neglect, Dependency, and Termination of Parental Rights Proceedings in North Carolina, 2023 edition, available at https://www.sog.unc.edu/resources/microsites/abuse-neglect-dependency-and-termination-parental-rights/

juveniles, the North Carolina General Assembly made records of A/N/D proceedings confidential and not public records. *See, e.g.*, N.C. Gen. Stat. § 7B-2901. It also enacted N.C. Gen. Stat. § 7B-801, which provides that A/N/D court proceedings are presumptively open to the public, but the presiding judge may close a hearing to the public, after "consider[ing] the circumstances of the case, including, but not limited to, the following factors: (1) The nature of the allegations against the juvenile's parent, guardian, custodian or caretaker; (2) The age and maturity of the juvenile; (3) The benefit to the juvenile of confidentiality; (4) The benefit to the juvenile of an open hearing; and (5) The extent to which the confidentiality afforded the juvenile's record pursuant to G.S. 132-1.4(l) and G.S. 7B-2901 will be compromised by an open hearing." N.C. Gen. Stat. § 7B-801(a)(1)-(5). However, no hearing may be closed if the juvenile requests it remain open. N.C. Gen. Stat. § 7B-801(b). Section 7B-801 is recognized as "a model example of a presumptively open dependency hearing law that effectively balances the competing privacy and First Amendment interests at stake in dependency hearings."[2]

## II.   CRC'S ALLEGATIONS

CRC is an organization whose lawyers want to observe A/N/D proceedings in Durham County, North Carolina. [DE 13, p. 8] CRC lawyers do not represent parties in these proceedings, nor are they based in North Carolina. [DE 15, 16, 17, 18] CRC lawyers contend they were denied access to A/N/D hearings on several

---

[2] Kelly Crecco, *Striking A Balance: Freedom of the Press Versus Children's Privacy Interests in Juvenile Dependency Hearings*, 11 First Amend. L. Rev. 490, 535 (2013).

occasions over the course of a year and that its lawyers were denied a copy of the September 13, 2023 closure order[3] with no explanations or opportunity to be heard. [DE 13, p. 12] CRC admits it was able to observe virtual A/N/D hearings [DE 13, pp 13-14] CRC also claims it observed one other A/N/D hearing when the courtroom was not closed. [Id.]

CRC claims that courtroom closure orders obstruct its ability to investigate "potential civil rights violations and advocate for improvement." [Id.] CRC plans to travel to Durham to observe Judge Walker again in January 2025. [Id.]

## LAW AND ARGUMENT

### I.   LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (quotation and citation omitted). Its purpose is to maintain the status quo until a final trial on the merits can be held. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999). To obtain a preliminary injunction, a plaintiff must demonstrate that: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Satisfying these four factors is a high bar," *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 385 (4th Cir. 2017); *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013). This standard is

---

[3] Pursuant to N.C. Gen. Stat. § 7B-2901(a), the records of juvenile cases "shall be withheld from public inspection and, except as provided in this subsection, may be examined only by order of the court."

even more exacting when a plaintiff seeks a mandatory preliminary injunction. A preliminary injunction compelling action "in any circumstance is disfavored," *Taylor v. Freeman*, 34 F.3d 266, 270 n.2 (4th Cir. 1994), and is warranted in only the most extraordinary circumstances. *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980).

CRC cannot satisfy the high bar for issuing a preliminary injunction that compels action as it requests here—it is not likely to succeed on the merits, it cannot demonstrate irreparable harm, and in fact, juveniles in A/N/D proceedings are likely to experience irreparable harm if the preliminary injunction is granted.

## II. CRC IS NOT LIKELY TO SUCCEED ON THE MERITS

While federal courts are obligated to exercise their proper jurisdiction, there are "certain instances in which the prospect of undue interference with state proceedings counsels against federal relief." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013) (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989) ("*NOPSI*")). Such abstention principles can be applied to withhold jurisdiction in cases invoking the First Amendment rights and should be applied here. *Lynch v. Snepp*, 472 F.2d 769, 775 (4th Cir. 1973) ("Despite the 'firstness' of the first amendment, we do not believe that every case asserting a first amendment violation is a proper one for a federal court to interfere with a state proceeding.")

CRC seeks imposition of truly extraordinary and unprecedented remedies: (1) a federal decree that the First Amendment provides the public and press[4] a broad

---

[4] The rights of the news media are coextensive with the public in general. *Co. Doe v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 2014).

right to access A/N/D proceedings; and (2) an injunction against the Durham County Sheriff prohibiting him from enforcing directives to close A/N/D proceedings that were issued without notice, an opportunity to be heard by interested members of the press and public, consideration of alternatives, and reviewable findings explaining why totally excluding the public is necessary to meet a compelling government interest. Such a decree would intrude upon the statutory framework in North Carolina's Juvenile Code that balances juveniles' and North Carolina's core state interest in the welfare of its children against general public right to open courts.

The ripple effect that accompanies the requested relief is difficult to overstate. The practical implication of the relief CRC seeks from this Court, is that A/N/D cases would grind to a halt while the court grapples with having to provide an opportunity to be heard (including appeals rights) regarding courtroom closures to everyone who seeks an access to A/N/D proceedings. If the court orders a hearing closed, then delaying the A/N/D case until it can issue a written order. When the A/N/D case is continued to allow time for a written order to be entered, and additional members of the public and press are at the continued hearing, then CRC's relief would require renewed notice and opportunity to be heard on the courtroom closure, resulting in a cycle of delay. This change to the state judicial process will negatively impact affected children and families. Piling the additional (and public) hearings regarding courtroom closures in A/N/D matters on a crowded docket,

6

would delay the permanent resolution of A/N/D cases, causing harm to the affected children and families.

This point is illustrated by CRC attorney Elizabeth Rossi's declaration, wherein she describes a lengthy and disruptive court discussion, ultimately ending with Judge Walker stating: "What we are talking about is children. And these children deserve to have their cases heard. These parents deserve to have their cases heard and learn what's going on with their children." [DE 15, ¶ 29]

CRC's requested relief impermissibly intrudes on state court proceedings which compels this Court to abstain on *O'Shea* and *Younger* principles, and dismiss the complaint with prejudice. *See Nivens v. Gilchrist*, 444 F.3d 237, 247 (4th Cir. 2006) (affirming district court's dismissal with prejudice where court abstained).

### A. *O'Shea* Requires Abstention to Avoid Intrusion in North Carolina's A/N/D Statutory Framework.

In *O'Shea v. Littleton*, 414 U.S. 488 (1974), the Supreme Court announced an abstention doctrine wherein federal courts may not exercise their jurisdiction over lawsuits that seek to impose "an ongoing federal audit of state . . . proceedings." The *O'Shea* plaintiffs sought injunctions in connection with the state's criminal justice system. *Id.* at 491–92, 500. The Supreme Court held that "an injunction aimed at controlling or preventing the occurrence of specific events that might take place" in future proceedings would lead to the federal interference in state judicial proceedings prohibited under abstention principles. *Id.*

7

Here, by asking the Court to enjoin the courtroom bailiff from enforcing §7B-801 closure orders, CRC requests precisely the type of audit of state judicial processes that the *O'Shea* Court rejected. An injunction would enable any individual to demand written closure orders be issued immediately, and if they disagreed with the order, march to the federal courts for interpretations and injunctions. This relief would constitute immediate interference in the individual ongoing A/N/D cases, to the detriment to all parties involved, and is also the kind of continuing audit and future challenge found to be objectionable in *O'Shea*. *See Kaufman v. Kaye*, 466 F.3d 83, 87 (2d Cir. 2006) (abstention is warranted where "any remedy fashioned by the state would then be subject to further challenges in the district court.")   Under these circumstances, "relief now sought by [plaintiff] would be so intrusive in the administration of the [state] court system that [a federal court] must, based on applicable precedent, abstain." *Kaufman*, 466 F.3d at 86 (relying on *O'Shea* principles). This Court should deny CRC's request for preliminary injunctive relief based on the teachings of *O'Shea* and its progeny.

### B. *Younger* also requires federal court abstention.

Abstention is proper here too under the *Younger* abstention principals. In *Younger*, the Supreme Court emphasized "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments," and highlighted "a system … in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate

8

activities of the States." *Younger v. Harris,* 401 U.S. 37, 44 (1971). "*Younger* is not merely a principle of abstention; rather, the case sets forth a mandatory rule of equitable restraint, requiring the dismissal of a federal action." *Williams v. Lubin*, 516 F. Supp. 2d 535, 539 (D. Md. 2007) (internal quotation omitted); *see also Courthouse News Serv. v. New Mexico Admin. Off. of Cts.*, 53 F.4th 1245, 1256 (10th Cir. 2022).

Under *Younger,* federal courts must refrain from exercising jurisdiction if "(1) there is an ongoing state judicial proceeding that began prior to substantial progress in the federal proceeding, (2) that proceeding implicates important, substantial, or vital state interests, and (3) there is an adequate opportunity to raise constitutional challenges within the framework of the state judicial process." *Robinson v. Thomas*, 855 F.3d 278, 285 (4th Cir. 2017). The Supreme Court has extended *Younger* abstention to state civil proceedings that implicate a state's interest in enforcing the orders and judgments of its courts. *NOPSI*, 491 U.S. at 367-68; *see Sprint Commc'ns, Inc. v. Jacobs*, 571 US 69, 78 (2013) (finding *Younger* abstention encompass pending "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.")

CRC's lawsuit fits squarely into these factors as extended to civil cases. CRC's lawsuit implicates how North Carolina judicial officials manage their juvenile courts, a well-recognized, strong state interest. *See Moore v. Sims*, 442 U.S. 415, 435 (1979) (requiring *Younger* abstention in case involving custody of allegedly abused children and explaining that "[f]amily relations are a traditional area of state concern" and

9

that Supreme Court was "unwilling to conclude that state processes are unequal to the task of accommodating the various interests and deciding the constitutional questions that may arise in child-welfare litigation"); *see also Harper v. Pub. Serv. Comm'n of W.VA.*, 396 F.3d 348, 352 (4th Cir. 2005) (recognizing family relations is a traditional area of state concern that may warrant *Younger* abstention). Moreover, §7B-801 closure orders undoubtedly qualify as "being uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 78; *see also Doe v. Doe*, 263 N.C. App. 68, 86–87 (2018) (noting the General Assembly's enactment of §7B-801 is to protect juvenile victims of abuse); *In re L.D.,* 903 S.E.2d 480 (N.C. Ct. App. 2024) (unpublished) (finding the trial court's § 7B-801 closure was a reasoned decision due to the sensitive nature of the allegations in the case.)

The last *Younger* factor—an "adequate opportunity to raise the constitutional claims" in the state court proceedings—can apply even if the federal plaintiffs are not parties to the state court action but have interests "intertwined" with the interests of the state court litigants. *Hicks v. Miranda*, 422 U.S. 332, 348–49 (1975). Here, CRC contends that its interests in court watching are substantially intertwined with those of the parents and children that are parties to the state A/N/D/ proceeding. [DE 13, p. 10] This intertwined interest provides CRC with an adequate opportunity to raise the constitutional challenges to courtroom closure in state court.

Further, CRC may directly challenge individual courtroom closures through mandamus or file a declaratory judgment action in state court challenging the constitutionality of §7B-801 as it relates to court closure orders. State courts are fully

10

capable of adjudicating federal constitutional claims. *See Moore*, 442 U.S. at 430

("The price exacted in terms of comity would only be outweighed if state courts were

not competent to adjudicate federal constitutional claims—a postulate we have

repeatedly and emphatically rejected.");*See also Virmani v. Presbyterian Health Servs.

Corp.*, 350 N.C. 449, 472 (1999); *Doe v. Doe*, 263 N.C. App. 68, 76 (2018).

For these reasons, *Younger* abstention applies and bars Plaintiff's request for

relief.

### C. There is no First Amendment public right of access to A/N/D proceedings.

CRC is not likely to succeed on the merits of its First Amendment claim. The

Fourth Circuit applies the "experience and logic" test to evaluate whether a First

Amendment right of access exists to a judicial proceeding or record. *Courthouse News

Serv. v. Schaefer*, 2 F.4th 318, 326 (4th Cir. 2021). The test requires courts to assess

two factors: (1) Whether the type of proceeding or record in question has historically

been open to the public; and (2) Whether public access would play a positive role in

the functioning of the proceeding or process. *Schaefer*, 2 F.4th at 326. Both prongs of

the test must be satisfied to establish a First Amendment right of court access. *Id.*

Historically, Juvenile A/N/D courts nationwide have been closed to the

public to protect the privacy and welfare of the children involved, as well as to

encourage the candid participation of families, witnesses and professionals. Since the

establishment of the juvenile court system at the end of the 19th century, all states,

the District of Columbia, and Puerto Rico have been concerned with the confidential

nature of such proceedings. *See in re Gault*, 387 U.S. 1, 14 (1967). This longstanding tradition of confidentiality was recognized by the Supreme Court over four decades ago, when then-Justice Rehnquist wrote: "It is a hallmark of our juvenile justice system in the United States that virtually from its inception at the end of the last century its proceedings have been conducted outside of the public's full gaze and the youths brought before our juvenile courts have been shielded from publicity." *Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 107–08 (1979) (Rehnquist, J., concurring).[5] The *Smith* Court also acknowledged that "all 50 states have statutes that provide in some way for confidentiality [of juvenile proceedings])." *Id.*

There are no federal corollaries to state A/N/D courts because "family relations are a traditional area of state concern." *Moore*, 442 U.S. at 435. However, federal courts regularly safeguard the confidentiality of juvenile proceedings and records in federal juvenile justice cases and have never recognized a First Amendment right of public access to these proceedings. *See United States v. Three Juvs.*, 61 F.3d 86, 86 (1st Cir. 1995) (holding that a federal statutory scheme "authorizes, but does not mandate, closure of juvenile proceedings"); *Hartford Courant Co., LLC v. Carroll*, 986 F.3d 211, 220 (2d Cir. 2021) (noting "the unremarkable assertion that juvenile courts typically proceed in private"); *United States v. Under Seal*, 853 F.3d 706, 713 (4th Cir. 2017) (discussing juveniles' interest in confidentiality, privacy, and safety); *United States v. A.D.*, 28 F.3d 1353, 1355 (3d Cir.

---

[5] CRC argues that the Court should ignore this Supreme Court precedent, contending former Chief Justice Rehnquist did not "characterize the history of juvenile justice accurately." [DE 13, p. 21, DE 20, ¶¶ 21-27]

12

1994) (holding that the Federal Juvenile Delinquency Act, 18 U.S.C. § 5031-42 "gives district judges authority to regulate access to the record of proceedings . . . on a case-by-case basis through a balancing of interests"). And when federal courts have considered whether the First Amendment provides a public right of access to state juvenile proceedings, they have likewise declined to announce any such right. *See e.g., Kentucky Press Ass'n, Inc. v. Kentucky*, 355 F. Supp. 2d 853, 865 (E.D. Ky. 2005) (neither experience nor logic support a right of access to juvenile judicial proceedings); *United States v. A.D.*, 28 F.3d 1353, 1357 (3d Cir. 1994) ("No centuries-old tradition of openness exists for juvenile proceedings, which are a relatively recent creation . . . .").

A district court within this Circuit recently dismissed an analogous First Amendment claim. The Western District of Virginia considered whether the First Amendment qualified right of public access applied to child support and custody proceedings in Virginia. *Briggman v. Burtman*, 2016 U.S. Dist. LEXIS 133712 (W.D. Va. 2016). There, the plaintiff alleged that the judges (in their official capacity) violated the First Amendment by barring him from observing juvenile and domestic relations courts proceedings in cases where he was not a party. *Id*. The court concluded that juvenile courts "have been historically closed to the public" and that plaintiff did not state a First Amendment claim.[6] *Id*. The Court should reach the same conclusion here.

---

[6] The court also concluded the plaintiff's claim for declaratory relief was barred by the Eleventh Amendment.

North Carolina's federal courts also have recognized the need to preserve confidential juvenile state court records entered into the record of a federal case. *See e.g. Rhoads v. Guilford Cty.*, No. 1:23-CV-854, 2024 U.S. Dist. LEXIS 175201, at *4 n.2 (M.D.N.C. Sep. 27, 2024) (unpublished) (in context of motion to seal documents filed in support of motion to dismiss, "North Carolina law protects the interests of minors by providing that the records of certain juvenile cases, including those relating to dependency, be withheld from public inspection and may be examined only by order of the court."); *Vang v. Ashby*, No. 1:18cv565, 2020 U.S. Dist. LEXIS 177321, at *7 (M.D.N.C. Sep. 28, 2020) (unpublished) (granting motion to seal portions of exhibits in civil matter that contained material subject to North Carolina's juvenile confidentiality laws); *Sahoo v. Gleaton*, No. 5:16-CV-00153-F, 2017 U.S. Dist. LEXIS 9299, at *5-6 (E.D.N.C. Jan. 24, 2017) (unpublished) (collecting cases); *Brunson v. N.C. Dep't of Soc. Servs.*, No. 5:09-CT-03063-FL, 2013 WL 1768681, at *4 (E.D.N.C. Apr. 24, 2013) (unpublished). In sum, CRC simply fails to meet the experience prong to establish the First Amendment right to access A/N/D proceedings.

CRC also cannot meet the logic prong because the requested relief under the First Amendment would not play a positive role in the functioning of the proceeding or process. Both the Supreme Court and Congress recognize that juveniles are deserving of special protections as compared to adults and that this is a compelling government interest. The Supreme has regularly held "that there is a compelling interest in protecting the physical and psychological well-being of minors." *Sable*

*Commc'ns of California, Inc. v. F.C.C.*, 492 U.S. 115, 125 (1989); *see also Ginsberg v. State of N. Y.*, 390 U.S. 629, 640 (1968) (A state "has an independent interest in the well-being of its youth."); *New York v. Ferber*, 458 U.S. 747, 756–57 (1982) (finding such interest "evident beyond the need for elaboration") (internal quotations omitted); *Schall v. Martin*, 467 U.S. 253, 263 (1984) (The "[s]tate has a *parens patriae* interest in preserving and promoting the welfare of the child … .") (internal quotations omitted); *Fields v. Murray*, 49 F.3d 1024 (4th Cir. 1995) (finding state's interest in the well-being of child abuse victims outweighs a defendant's right to face her accusers face-to-face); *Jordan by Jordan v. Jackson*, 15 F.3d 333 (4th Cir. 1994) (noting the "magnitude of the state's interest in the welfare of its children and the unthinkable consequence of a premature, erroneous return of a child to the custody of parents in whose custody the child's life might be in imminent danger.").

Congress also prioritizes the confidentiality of child welfare proceedings to protect the privacy and well-being of minors and children. While federal law allows a state to determine its own policy related to public access to court proceedings that determine child abuse or neglect, it requires that the state policy ensure the safety and well-being of the child, parents, and family. 42 U.S.C. § 671(c). In the face of this Congressional mandate, judicial policymaking to the contrary is inappropriate. *See United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 727 (1979) (explaining that federal courts should create a federal rule of decision only "when Congress has not spoken"). In sum, both the Supreme Court and Congress recognize the logic in protecting juveniles during intrusive court proceedings.

15

Further, juvenile A/N/D courts differ in important ways from civil proceedings, where the Fourth Circuit recognizes a qualified First Amendment right of access. *Schaefer*, 2 F.4th 318. First, unlike civil cases, juveniles involved in A/N/D proceedings did not choose to become involved in a court proceeding, nor are they responsible for the alleged actions that resulted in the proceeding. Second, confidentiality of A/N/D proceedings helps protect the privacy and dignity of the parties involved and fosters the integrity of the judicial process. When a court finds that a §7B-801 closure is necessary, children and families are at ease to disclose deeply personal and sensitive information related to mental health, substance abuse, physical and sexual abuse, and medical information, that if made public, could cause embarrassment, stigma and emotional harm. Disclosure could also have long-lasting negative impacts on children's well-being and families, particularly when information is posted on the internet and social media. Families may be discouraged from engaging in court-ordered services, and chilled from reporting abuse or neglect. State courts consider these factors in making closure decisions.

Additionally, public oversight is not as critical as in other contexts because other safeguards exist. Every party in an A/N/D case is represented by their own attorney, including the child. Additionally, the judicial determinations are appealable to the North Carolina Court of Appeals where published opinions are rendered, anonymized, and available to the public.

16

Finally, as explain in the abstention argument above, the First Amendment relief sought here would negatively impact children and families by significantly delaying A/N/D proceedings.

CRC is unlikely to succeed on the merits of its claims as it satisfied neither prong of the experience and logic test. It is not entitled to preliminary injunction.

### D. CRC additionally has no standing and its claims are not ripe

Whether a plaintiff has standing to sue is a "bedrock constitutional requirement . . . applied to all manner of important disputes." *United States v. Texas*, 599 U.S. 670, 675 (2023). While standing involves "the question[] of who may sue," ripeness involves "when they [may] sue." *South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019). "In practice[,] there is an obvious overlap between" these two questions. *Id.*; *see also, e.g., Trump v. New York*, 592 U.S. 125 (2020) (per curiam); *Cooksey v. Futrell*, 721 F.3d 226, 240 (4th Cir. 2013).

To establish standing, a plaintiff "must adequately allege: (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013). The plaintiff bears the burden of establishing the elements of standing. *Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 899 (4th Cir. 2022).

"For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* To be concrete, the Supreme Court has "emphasized repeatedly" that the injury "must be concrete in both a qualitative and temporal sense. The complainant must allege an injury to himself that is distinct and palpable, as opposed to merely abstract." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990); *see also Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 368 (2024) ("[R]equiring the plaintiff to show an injury in fact . . . screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action.").

"An organization may have standing to sue on its own behalf for injuries it sustains as a result of a defendant's actions." *Republican Nat'l Comm. v. N. Carolina State Bd. of Elections*, 120 F.4th 390, 395 (4th Cir. 2024) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) n. 19 (1982)). However, an organization cannot "manufacture" standing by expending resources in anticipation of a speculative harm. *Wild Virginia v. Council on Env't Quality*, 56 F.4th 281, 300 (4th Cir. 2022). "[M]ere expense does not constitute an injury in-fact where the decision to divert resources is not in response to a threat to the organization's core mission." *Republican National Committee*, 120 F.4th at 396. Rather, a plaintiff-organization must show that the defendant's "actions directly affected and interfered with [plaintiff's] core business activities . . . ." *Id.* Moreover, "an injury to organizational purpose, without more, does not provide a basis for standing." *Southern Walk at Broadlands Homeowner's Ass'n,*

*Inc.*, 713 F.3d at 183; *see also Sierra Club v. Morton*, 405 U.S. 727, 739 (1972); *Maryland Highways Contractors Ass'n, Inc. v. State of Md.*, 933 F.2d 1246, 1250–51 (4th Cir. 1991).

CRC asserts §7B-801 closure orders in A/N/D cases "have compelled CRC staff to travel repeatedly to Durham, at significant expense of money and time, largely to no avail" and that being excluded from observing juvenile court hearings "obstruct[s] CRC's ability to investigate potential civil rights violations and advocate for improvement." [DE 13, p. 14]. But CRC does not allege its mission has been significantly or perceptively impaired. Indeed, its mission is not investigating juvenile dependency courts, but rather directed at mass incarceration and "dismantling white supremacy."[7] Sending attorneys to observe juvenile court proceedings where it represents no party to investigate *potential* civil rights violations is precisely the type of abstract frustration of organizational purpose and discretionary spending that the Supreme Court has found insufficient to confer organizational standing.

CRC's claim is also not ripe. "Ripeness is a justiciability doctrine intended to prevent the courts from entangling themselves in premature disputes." *Clayland Farm Enterprises, LLC v. Talbot Cnty., Maryland*, 672 F. App'x 240, 243–44 (4th Cir. 2016). "A case is fit for adjudication when the action in controversy is final and not

---

[7] "CRC is a non-profit organization dedicated to challenging systemic injustice in the United States' legal system- a system that is built on white supremacy and economic inequality." Its focus is "individuals accused and convicted of crimes, their families and communities, people currently or formerly incarcerated, activists, organizers, judges, and government officials to challenge mass human caging, to create a legal system that promotes equality and human freedom, and to dismantle white supremacy." https://civilrightscorps.org/our-mission/ (last accessed January 24, 2025).

19

dependent on future uncertainties; conversely, a claim is not ripe when it rests upon contingent future events that may not occur as anticipated." *In re Naranjo*, 768 F.3d 332, 347 (4th Cir. 2014); *accord A/S J. Ludwig Mowinckles Rederi v. Tidewater Const. Co.*, 559 F.2d 928, 932 (4th Cir. 1977) ("An important factor in considering ripeness is whether resolution of the tendered issue is based upon events or determinations which may not occur as anticipated.").

The Sixth Circuit recently dismissed a similar case as unripe. There, a press association mounted a First Amendment challenge to Kentucky's statutory provisions which denied the media access to juvenile court proceedings and records. *Kentucky Press Ass'n, Inc. v. Kentucky*, 454 F.3d 505 (6th Cir. 2006). The court determined the plaintiff's claim was not ripe because it had never petitioned the Kentucky courts for access to the juvenile proceedings, and it had not yet been determined whether Kentucky law interpreted by Kentucky courts, violated the First Amendment, and there was no certainty that Kentucky courts would deny the press access in the future. Similar to here, the plaintiff argued that its members were denied access to juvenile records by the clerk's office and bailiffs. The court concluded that past denials did not mean that Kentucky law would not provide for access were the plaintiff to assert such a right in the Kentucky courts which it had not done. *Id.*

Just as in Kentucky, CRC's claim is dependent on future events that have not occurred. And because §7B-801 does not exclude the public as a matter of law and CRC has not challenged §7B-801 in state court, CRC cannot plausibly allege that it is guaranteed they will be excluded in the future.

### E. Judge Walker's judicial immunity bars CRC's claim.

Absolute judicial immunity, a concept deeply rooted in American jurisprudence, protects judges from the burdens that accompany litigation and reduces the risk that aggrieved litigants will file suits against judges as a means of collaterally attacking adverse judgments. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). It bars any suit against a judicial officer arising out of his or her judicial acts. *See, e.g., Forrester v. White*, 484 U.S. 219, 227–29 (1988); *Stump v. Sparkman*, 435 U.S. 349, 360, 362 (1978). Two conditions must be present to trigger judicial immunity. Judicial officials must act in their judicial capacities and not "in the complete absence of jurisdiction." *King v. Myers*, 973 F.2d 354, 356–57 (4th Cir. 1992).

Both conditions are satisfied here: issuance of a §7B-801 closure order is a statutorily authorized judicial act. Judge Walker was within her jurisdiction and acting pursuant to lawful authority when she issued closure orders, so judicial immunity applies.

Judicial immunity specifically applies to bar actions against judicial officials brought under 42 U.S.C. § 1983. *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967), and bars not just money damages, but also equitable relief. *Donato Malave v. Abrams*, 547 F. App'x 346, 347 (4th Cir. 2013). Only when a declaratory decree is violated or declaratory relief is unavailable could Plaintiff possibly avoid judicial immunity. 42 U.S.C. § 1983. But CRC has not alleged that Judge Walker violated a declaratory decree or that declaratory relief is unavailable, so judicial immunity bars its claims for relief.

21

## III.    CRC DOES NOT FACE IRREPARABLE HARM

A mere "possibility of irreparable harm" does not support a grant of a preliminary injunction because it is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. "[I]n the context of an alleged violation of First Amendment rights, a plaintiff's claimed irreparable harm is 'inseparably linked' to the likelihood of success on the merits of plaintiff's First Amendment claim." *WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009) (citation omitted). Although "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373 (1976), plaintiffs must actually show that irreparable harm to the First Amendment rights will occur in the injunction's absence.

As explained above, CRC cannot make a clear showing it is likely to succeed on the merits. Moreover, because the factors set out in §7B-801(a) are already narrowly tailored to serve the competing interest of protecting the welfare of children and the public's right of access, even if granted, the injunctive relief would not result in CRC receiving more access to A/N/D proceedings. Therefore, its asserted harm, expending resources to travel to Durham, and obstruction of its ability to "investigate potential civil rights violations and advocate for improvement" when a §7B-801 closure order is issued [DE 13, pp. 8, 27], is not remedied by the requested preliminary injunction.

22

## IV. THE EQUITIES TO THE PARTIES AND THE PUBLIC INTEREST WEIGH AGAINST AN INJUNCTION

The final two *Winter* factors, the balance of the equities and the public interest, "merge when the Government is the opposing party." *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). When the Court considers the equities, it must balance the competing interests of injury and the effect on each party of granting or withholding the requested relief. *Winter*, 555 U.S. at 24. In addressing the public interest, the Court must consider "the public consequences in employing the extraordinary remedy of injunction." *Id.*

The requested injunction presents serious negative public consequences—trampling the compelling government interest of protecting juveniles' privacy rights and unnecessarily delaying A/N/D proceedings. The North Carolina General Assembly already balanced the competing public interest in the welfare of children and First Amendment interests at stake in dependency hearings when it enacted §7B-801, making A/N/D proceedings presumptively open, while ensuring the judge retains discretion to close hearings when it is in best interest of the child. *See Maryland v. King*, 567 U.S. 1301 (2012) ("Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.")

The injunction and declaration CRC seeks would apply to any member of the public who wants to observe A/N/D proceedings. In Durham County, there is a well-documented history of advocacy groups, including one proposed amici, of not

only publishing sensitive information and photographs of juveniles involved in A/N/D proceedings,[8] but also encouraging judicial intimidation campaigns,[9] including against Judge Walker.[10] CRC's argument that less restrictive alternatives to closure could suffice to protect privacy, and its reassurance to the Court that it takes seriously the privacy interests of children while expressing its opinion that "most" A/N/D proceedings "should not even require confidentiality" because "the vast majority do not involve physical or sexual abuse allegations" [DE 13, p 29], is unavailing.

## CONCLUSION

For these reasons, Judge Walker respectfully requests that the Court abstain, deny this motion and dismiss this case with prejudice.

---

[8] Proposed amici Operation Stop CPS, another court watching group [DE 34, p. 17], has published numerous pictures, names, and case details of children involved in ongoing A/N/D proceedings. *See* www.operationstopcps.com; OperationStopCPS (@operationstopcps), Instagram, http://instagram.com/operationstopcps.com; Operation Stop CPS, Facebook, http://facebook.com/OperationStopCPS.

[9] *See* Laura Leslie, *Group bashing child protective services pressures Durham County officials, raising safety concerns* (August 8, 2022), https://www.wral.com/story/group-bashing-child-protective-services-pressures-durham-county-officials-raising-safety-concerns/20408524/

[10] Recently "WANTED" posters have been hung in Durham. These posters feature both defendants' photos, accusing them of "conspiracy to kidnap black children," and containing a QR code linking them to a news article about this very case. [Exhibit A]

Respectfully submitted, this the 24th day of January, 2025.

JEFF JACKSON
Attorney General

/s/ Elizabeth Curran O'Brien
Elizabeth Curran O'Brien
Special Deputy Attorney General
N.C. State Bar No. 28885
P.O. Box 629
Raleigh, NC 27602-0629
Telephone: (919) 716-0091
Facsimile: (919) 716-6755
eobrien@ncdoj.gov
*Counsel for Judge Doretta Walker*

25

## **CERTIFICATE OF WORD COUNT**

I hereby certify that this brief, including the body of the brief, headings and footnotes, but excluding the caption, signature lines, certificate of service, and any cover page or index not included, does not exceed the 6,250 word limit on briefs supporting motions and responsive briefs, or if a reply brief does not exceed the 3,125 word limit.  *See* LR 7.3(d)(1).

/s/ Elizabeth Curran O'Brien
Elizabeth Curran O'Brien
Special Deputy Attorney General