# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## Case No: 1:24-cv-00943

| | |
|---|---|
| CIVIL RIGHTS CORP., <br><br> Plaintiff, <br><br> v. <br><br> JUDGE DORETTA L. WALKER, in her official capacity, and CLARENCE F. BIRKHEAD, in his official capacity, <br><br> Defendants. | **DECLARATION OF JOSHUA SOTOMAYOR** |

I, Joshua Sotomayor, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I respectfully submit this Declaration in support of the Intervenor-Defendant, the North Carolina Administrative Office of the Courts on behalf of its Office of Guardian ad Litem Services' (collectively the "GAL Program") Proposed-Intervenor Defendant North Carolina Administrative Office Of The Courts' Response In Opposition To Plaintiff's Motion For Preliminary Injunction.

2. I am a Guardian Ad Litem (GAL) Attorney Advocate for the GAL Program's Judicial District 16 office and have held this position since February 14th, 2024. The Judicial District 16 office is assigned to handle matters filed in North Carolina Judicial District 16, which is comprised entirely of Durham County. Prior to this position, I was an Assistant District Attorney with the Special Victims Unit at the Durham County District Attorney's Office for a little under five years.

3. There is one other staff GAL Attorney Advocate that works in Judicial District 16. We are the appointed attorney advocates for all juvenile abuse, neglect, and dependency cases filed in Durham County except for cases where a conflict attorney is appointed.

4. Since I started in this position, on average, I am appointed to represent approximately 80-90 children in cases pending in abuse, neglect, and dependency court at any time.

5. As a Guardian Ad Litem Attorney Advocate, a district court judge appoints me to represent the best interests of juveniles in abuse, neglect, and dependency proceedings filed in Durham County district court pursuant to N.C.G.S. § 7B-601. As an appointed guardian ad litem attorney, my duties are to (individually or with the assistance of GAL Program staff or Guardian Ad Litem volunteers): make an investigation to determine the facts, the needs of the juvenile, and the available resources within the family and community to meet those needs; facilitate, when appropriate, the settlement of disputed issues; to offer evidence and examine witnesses at adjudication; explore options with the court at the dispositional hearing; conduct follow-up investigations to insure that the orders of the court are being properly executed; report to the court when the needs of the juvenile are not being met; and protect and promote the best interests of the juvenile until formally relieved of the responsibility by the court. N.C.G.S. § 7B-601(a).

6. In my experience in Durham County district court, the juvenile abuse, neglect, and dependency cases are open to the public unless one of the parties/parties' attorneys makes a motion to close the courtroom pursuant to N.C.G.S. § 7B-801(a). The

judge will hear the motion and make findings on the record specific to the case on whether the criteria in the statute are met warranting closure. Individual motions to close are made for each case and for each hearing in the case; not for all cases calendared for a specific day.

7. Under N.C.G.S. § 7B-801(a): "In determining whether to close the hearing or any part of the hearing, the court shall consider the circumstances of the case, including, but not limited to, the following factors:

(1) The nature of the allegations against the juvenile's parent, guardian, custodian or caretaker;

(2) The age and maturity of the juvenile;

(3) The benefit to the juvenile of confidentiality;

(4) The benefit to the juvenile of an open hearing; and

(5) The extent to which the confidentiality afforded the juvenile's record pursuant to G.S. 132-1.4(l) and G.S. 7B-2901 will be compromised by an open hearing."

8. In my experience, the Durham County district court judges do not close juvenile abuse, neglect, and dependency proceedings on the judge's own motion. Instead, the Durham County district court judges will only close court after considering the motion of a party to close court and after considering the N.C.G.S. § 7B-801(a) factors. In my experience, these motions can and have been made by the attorney for any party to the case, including the county Department of Social Services (DSS), the GAL Program, and the respondent parent/caretaker/guardian and/or their Rule 17 GAL.

9. In my experience, the Durham County district court judges do not always grant motions to close the courtroom in juvenile abuse, neglect, and dependency cases.

10. I only make a motion to close the courtroom when I determine that the factors set forth in North Carolina General Statute § 7B-801 have been triggered by the anticipated testimony or evidence. This typically occurs when the testimony or evidence will revolve around any of the follow: the juvenile's mental health (usually their mental health records); allegations of physical, sexual, or mental abuse; allegations of physical or sexual assault; or the sexual health of the juvenile. The foregoing list is not exhaustive but follows the general guiding principles of the statute pertaining to testimony or subject matter that would benefit from the enhanced confidentially afforded by Chapter 7B of North Carolina's General Statutes.

11. Additionally, if possible, I will limit my motion to close the courtroom to the testimony or evidence that implicates the N.C.G.S. § 7B-801(a) factors and will not seek to close the entire proceeding unless necessary. In practice, this results in the hearing being open until the particularly sensitive testimony or evidence is elicited, at which time a motion to close is made with the caveat that once the testimony or evidence is over or no longer being discussed, the courtroom will be reopened to the public. This is not always possible as sometimes the entire hearing will revolve around the sort of sensitive information that triggers the statute; but, when possible, I utilized this process.

12. As an example, if the sensitive testimony or evidence is only a part of the anticipated testimony or evidence in the hearing, then I will make a motion to close the courtroom only when that sensitive testimony or evidence is to be heard.

13. When making a motion to close the courtroom, I will generally note the sensitive nature of the testimony or evidence that will be elicited, however, I will not discuss it in detail because that would defeat the purposes of closing the courtroom to the public since the public is still present for the motion. Further, the judge has access to the case file, which will contain the allegations (e.g., of abuse and/or neglect) and thereby inform the judge of the type of sensitive information that will be discussed when the merits of the case are addressed. *See, e.g.*, N.C.G.S. § 7B-801(a)(1) (requiring judge to consider, *inter alia*, "The nature of the allegations against the juvenile's parent, guardian, custodian or caretaker" when deciding whether to close a courtroom).

14. In my experience, motions to close the courtroom under N.C.G.S. § 7B-801(a) must be made on each case and in each hearing that the parties wish to close. Immediately following the closed portion of the hearing, the courtroom is reopened, i.e., the courtroom deputy unlocks the courtroom door and removes the "closed hearing" sign.

15. In my experience, after the judge closes the courtroom, the courtroom deputy closes and opens hearings in abuse, neglect, and dependency cases in the same manner that I observed in criminal hearings that were closed in Durham County district and superior court.

16. In my experience, the judge will issue the written order on the decision to close the courtroom following the hearing. The judge typically asks the attorney that made the motion to close the courtroom to draft the proposed closure order, solicit review by the other parties, and provide it to the judge following the hearing. The judge will then issue the written order and may make changes to the proposed order before issuing the written

5

order. The order is then filed and served on the parties. The written order will capture the oral decision on the motion to close that is issued from the bench.

17. If written orders to close the courtroom were required before the courtroom could be closed, it likely would result in a delay in the juvenile abuse, neglect, and dependency proceeding to allow time to draft the order, solicit party review, have the court review and issue, file, and serve the written order. This would cause significant immediate delay for the affected case, and consequently could delay the hearing or other hearings on the calendar for a day(s) or weeks because of when the juvenile abuse, neglect, and dependency cases can be scheduled in Durham County.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 23rd, 2025.

_____
Joshua Sotomayor

6