# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No: 1:24-cv-00943

| | |
|---|---|
| CIVIL RIGHTS CORP., <br><br> Plaintiff, <br><br> v. <br><br> JUDGE DORETTA L. WALKER, in her official capacity, and CLARENCE F. BIRKHEAD, in his official capacity, <br><br> Defendants. | **DECLARATION OF MELISSA LOVE** |

I, Melissa Love, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I respectfully submit this Declaration in support of the Intervenor-Defendant, the North Carolina Administrative Office of the Courts on behalf of its Office of Guardian ad Litem Services', (collectively the "GAL Program") Proposed-Intervenor Defendant North Carolina Administrative Office Of The Courts' Response In Opposition To Plaintiff's Motion For Preliminary Injunction.

2. I am the Guardian ad Litem District Administrator for Judicial District 16, which consists entirely of Durham County. I have held this position for approximately two years. In this position, I perform the following tasks, *inter alia*: provide direction, management, and supervision of the Guardian ad Litem (GAL) program in Judicial District 16; lead a paid staff of 6 along with approximately 120 volunteers; collaborate with community partners while providing advocacy for abused and neglected children through a team approach of GAL attorney, GAL program staff, and GAL volunteer in the court;

recruit, screen, train, and supervise citizen volunteers to perform the duties of the GAL; participate on interdisciplinary task forces and committees to assist in the development of statewide Guardian ad Litem policies.

3. Prior to becoming the Guardian ad Litem District Administrator for Judicial District 16, I was a GAL Supervisor for Judicial District 16, and held that position for approximately 26.5 years. In that role, I *inter alia*, carried a caseload in juvenile abuse, neglect, and dependency proceedings. I would work with the appointed GAL volunteer and attorney advocate to: make an investigation to determine the facts, the needs of the juvenile, and the available resources within the family and community to meet those needs; facilitate, when appropriate, the settlement of disputed issues; to offer evidence and examine witnesses at adjudication; explore options with the court at the dispositional hearing; to conduct follow-up investigations to insure that the orders of the court are being properly executed; report to the court when the needs of the juvenile are not being met; and protect and promote the best interests of the juvenile until formally relieved of the responsibility by the court. N.C.G.S. 7B-601(a). Our practice is to assign each child in a case with a GAL attorney, GAL volunteer, and GAL program staff. The GAL program views GAL volunteers as a community voice for our child clients. We benefit from having volunteers over a range of ages and from all walks of life—retired individuals, professionals (educators, lawyers, healthcare workers, paralegals, businessmen), law school students, parents, and homemakers, etc.

4. When I was a GAL Supervisor, I directly oversaw the work of the unpaid GAL volunteers who were appointed as Guardian ad Litem. My caseload consisted of up

to 150 children at a time. I would attend court for each proceeding that involved one of the children on my caseload, and therefore, had many opportunities to observe these proceedings in court.

5. Since becoming District Administrator, I have continued to carry a small caseload supervising GAL volunteers and I am present in court for these cases. Additionally, I observe court when new staff are transitioning to their positions. I attended court approximately five to seven days a month in 2024.

6. In my 28+ years of experience in the courtroom in Durham, I have had many opportunities to observe motions being made to close the courtroom in juvenile abuse, neglect, and dependency proceedings. During my years here, I have observed court with 15 seated judges and several visiting/emergency judges.

7. In my experience, the Durham County District Court Judges will consider courtroom closure on the motion of a party for a hearing in a specific case. When a motion is made, the attorney making the motion makes an argument to the judge as to why it is necessary for the protection of the child or parent to close the courtroom for that specific hearing. The judge will then grant or deny the motion. I do not recall that I have ever been present when a judge has closed a courtroom on his/her own motion. I do not recall that I have ever been present when a judge has closed a courtroom for the entire day of juvenile abuse, neglect, and dependency court, as opposed to a hearing in a specific case. When a motion to close the courtroom has not been made and granted, the court has remained open.

8. It has been my observation that when the judge orders the courtroom closed for a specific proceeding, the bailiff places a sign on the outside of the courtroom door

3

which states "closed hearing." Upon the completion of the hearing, the bailiff removes the sign and reopens the courtroom for other proceedings that are calendared that day.

9. In my observation, when the courtroom is closed all persons that are not a party, attorney, appointed Guardian ad Litem volunteer or staff, or witness for the case being heard are required to leave the courtroom. This includes parties to other cases on the docket that day, Guardian ad Litem volunteers that are not appointed to the specific case, and Guardians ad Litem that are in the process of being trained.

10. Courtroom closures can be inconvenient for the GAL program because it interferes with our ability to train new Guardian ad Litem volunteers, who are required to observe at least 3 hours of juvenile abuse, neglect, and dependency proceedings as part of their training.

11. Currently, there are two judges assigned to preside over juvenile abuse, neglect, and dependency proceedings in Durham County. An emergency judge will preside over conflict cases or when the two assigned judges are not available. The two assigned judges each preside over 7 days of court within the month. The emergency judge usually presides over 1-2 days of court per month.

12. Typically, each assigned judge will start their 7-day assignment on a Thursday and handle scheduling and administrative case matters on Thursday along with post termination of parental rights hearings. The Thursday morning sessions are Webex remote proceedings while the afternoon session may be an in-person session. The courtroom is open for the public to be present, but the parties and their attorneys are provided with a link to attend remotely. On Friday and the following week, the assigned

4

judge typically will hold court in-person, while allowing for hybrid in-person/WebEx proceedings to accommodate a parent or caretaker who lives a distance away or a witness who may need to provide testimony remotely. Those sessions are typically ones that address the merits of the case with less scheduling and administrative matters being addressed.

13. In March of 2024, I reviewed the audio recordings of juvenile abuse, neglect and dependency cases held on September 11, 12, 13, 14 and 15, 2023. These audio files are recorded and maintained by the Durham County Clerk of Superior Court in accordance with the Director of the Administrative Office of the Court's Rules of Recordkeeping for the Clerks of Superior Court. *See* N.C.G.S. § 7A-109(a); eCourts Rules of Recordkeeping for Clerks of Superior Court, Rule 18.2 (Attached as Exhibit A); Rules of Recordkeeping, Rule 19.2 (Attached as Exhibit B). In my review of these audio files, I observed the following:

- On September 11, 2023, two cases were on the court calendar. In one case, a motion to close was made and granted. The other hearing was open to the public.

- On September 12, 2023, four cases were on the court calendar. No motions were made to close the courtroom, and all hearings were open to the public.

- On September 13, 2023, three cases were on the court calendar. In one case a motion to close was made and granted. The other two hearings were open to the public.

- On September 14, 2023, four cases were on the court calendar. In three cases, a motion to close was made and granted. The other hearing was open to the public.

5

- On September 15, 2023, six in-person cases were called for the morning session. Based on the audio, toward the beginning of the session the attorneys and judge were discussing courtroom closure and the judge subsequently ordered persons not involved with the cases to remove themselves from the courtroom. Additional hearings were held that day via Webex but I did not review that audio. There was another case called for the afternoon court session which was open to the public.

14. The GAL program staff for Judicial District 16 is aware of instances where confidential information about the juveniles that we are appointed to represent has been publicized on the internet by advocacy groups.

15. In my years of working in the GAL program, I have witnessed times when the public (i.e., individuals that are not associated with a case before the court) have observed abuse, neglect, and dependency proceedings and the courtroom has not been closed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 23, 2025.

*Melissa Y. Love*
Melissa Y. Love