IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:24-cv-943

CIVIL RIGHTS CORPS,              )
                                 )
    Plaintiff,               )
                                 )
v.                               )   **MEMORANDUM OF LAW IN SUPPORT**
                                 )   **OF JUDGE WALKER'S**
                                 )   **MOTION TO DISMISS**
JUDGE DORETTA L. WALKER, in her  )
official capacity, and CLARENCE F. )
BIRKHEAD, in his official capacity, )
                                 )
    Defendants.              )

## INTRODUCTION

Plaintiff Civil Rights Corps (CRC) challenges Judge Doretta Walker's exercise of judicial discretion in juvenile abuse, neglect, and dependency (A/N/D) cases, arguing that her orders closing the courtroom violate its First Amendment right to public access in juvenile A/N/D courts. CRC does not claim that Judge Walker acted beyond her judicial authority or that N.C. Gen. Stat. § 7B-801—the statute that permits Judge Walker to issue closure orders—is unconstitutional. CRC's claim should be dismissed based upon the *Younger* and *O'Shea* abstention doctrines, judicial immunity, and the Eleventh Amendment. CRC also fails to state a claim because there is no recognized First Amendment right of public access in juvenile A/N/D hearing or records.

## STATEMENT OF FACTS

### I.   North Carolina's Juvenile Code

The North Carolina Juvenile Code is a statutory framework aimed at safeguarding the welfare and privacy of children. *Matter of J.M.*, 384 N.C. 584, 591–92 (2023). Records of

1

A/N/D proceedings are confidential and not public records. *See, e.g.*, N.C. Gen. Stat. § 7B-2901. While A/N/D court proceedings are presumptively open to the public, the presiding judge has the discretion to close a hearing after considering: (1) The nature of the allegations against the juvenile's parent, guardian, custodian or caretaker; (2) The age and maturity of the juvenile; (3) The benefit to the juvenile of confidentiality; (4) The benefit to the juvenile of an open hearing; and (5) The extent to which statutory confidentiality of the juvenile's record will be compromised by an open hearing. N.C. Gen. Stat. § 7B-801(a)(1)-(5). No hearing may be closed if the juvenile requests it remain open. N.C. Gen. Stat. § 7B-801(b). Section 7B-801 is recognized as "a model example of a presumptively open dependency hearing law that effectively balances the competing privacy and First Amendment interests at stake in dependency hearings." *See* Kelly Crecco, *Striking A Balance: Freedom of the Press Versus Children's Privacy Interests in Juvenile Dependency Hearings*, 11 First Amend. L. Rev. 490, 535 (2013).

## II.   CRC's allegations

CRC is a civil rights law firm focused on addressing systemic injustice through advocacy, public education, policy change, and litigation. [DE 1, ¶ 2] CRC wants to observe Durham County A/N/D court proceedings because it is investigating potential civil rights violations. [¶ 15] CRC contends that A/N/D hearings should be open to public scrutiny. [¶ 22]

2

Durham County juvenile A/N/D court operates two weeks each month, with Judge Walker presiding over only one week.[1] [¶ 26] CRC asserts that Judge Walker prevented it from observing her courtroom on seven days in 2023 and 2024, without giving CRC an opportunity to be heard or making written findings concerning CRC's exlcusion. [¶¶ 26-29] CRC claims that on some occasions, they were singled out for exclusion. [¶¶ 27-28]

CRC maintains it seeks to understand Durham County's A/N/D court process, particularly how "judicial officers apply legal standards and make discretionary decisions" in A/N/D cases. [¶ 24] CRC claims that its exclusion from A/N/D hearings hinders its ability to investigate potential civil rights violations, [¶¶ 23-24], monitor judicial decision-making [¶¶ 20-21], and advocate for policy reforms. [¶¶ 24-25]

## LAW AND ARGUMENT

### I. LEGAL STANDARD

#### A. Rule 12(b)(1)

This Court must dismiss all or part of a complaint over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). This threshold question shall be addressed by the court before considering the merits of the case. *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999). A plaintiff has the burden of proving that jurisdiction exists. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

#### B. Rule 12(b)(6)

---

[1] Judge Walker is currently assigned to these court sessions by the chief district court judge who arranges schedules and assigns district court judges for sessions of district courts. N.C. Gen. Stat. § 7A-146.

Rule 12(b)(6) concerns the legal sufficiency of a plaintiff's complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). The well-pleaded allegations are taken as true, including all reasonable inferences therefrom, and the complaint is liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996). Nonetheless, courts are not bound by "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). A complaint must contain sufficient factual allegations, which accepted as true, state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## II.   FEDERAL COURT ABSTENTION IS REQUIRED

CRC's request for declaratory and injunctive relief undermines principles of comity and federalism by demanding federal oversight of Durham County A/N/D proceedings. While federal courts must exercise jurisdiction where appropriate, they must avoid undue interference in ongoing state judicial processes. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans (NOPSI)*, 491 U.S. 350, 368 (1989)); *Lynch v. Snepp*, 472 F.2d 769, 772 (4th Cir. 1973).

CRC asks this Court to: (1) declare that the First Amendment grants unqualified public access rights to A/N/D proceedings; (2) declare that the defendants will violate CRC's rights in the future if Judge Walker issues a § 7B-801 closure order and does not provide CRC an opportunity to be heard and does not make specific, on-the-record, reviewable findings that

4

closure is necessary after applying a strict scrutiny standard; and (3) enjoin the Durham County Sheriff from taking any action to close the courtroom in accordance with Judge Walker's orders unless he determines whether the order meet federally imposed strict scrutiny standards. [DE 1, pp. 35-36] Granting such relief would intrude on North Carolina's statutory framework governing juvenile court proceedings, interfere with Judge Walker's decision-making in individual A/N/D cases, and disrupt the administration of A/N/D courts. Federal courts have consistently avoided such oversight, particularly when state law already balances child welfare concerns with judicial discretion.

### A. *O'Shea* abstention bars CRC's request for injunctive relief.

In *O'Shea v. Littleton*, the Supreme Court announced an abstention doctrine under which federal courts may not exercise their jurisdiction over lawsuits that seek to impose "an ongoing federal audit of state . . . proceedings." *O'Shea v. Littleton*, 414 U.S. 488 (1974). The Supreme Court held that "an injunction aimed at controlling or preventing the occurrence of specific events that might take place" in future proceedings would lead to the federal interference in state judicial proceedings prohibited under abstention principles. *Id.*

Federal courts have consistently applied *O'Shea* to bar injunctions that interfere with state judicial discretion, especially in courtroom management. *See Kaufman v. Kaye*, 466 F.3d 83 (2d Cir. 2006) (applying *O'Shea* abstention where plaintiffs sought an injunction altering state judicial procedures); *E.T. v. Cantil-Sakauye*, 682 F.3d 1121 (9th Cir. 2012) (applying *O'Shea* abstention to bar federal interference with state judicial administration). These cases reaffirm that federal courts should not dictate how state judges issue orders or manage courtroom proceedings.

5

CRC's requested relief would impose federal supervision over North Carolina's A/N/D courts, requiring federal oversight of all future closure orders, impose procedural findings before hearings can be closed, and federal review whenever a closure order is challenged. This would effectively turn the Court into a supervisory body over state courtrooms, which *O'Shea* expressly forbids. Because CRC's requested relief would entangle federal courts in the day-to-day operation of North Carolina's judicial system, *O'Shea* abstention applies.

Further, CRC's requested injunction would paralyze A/N/D proceedings and harm children and families. CRC's requested procedural requirements—notice, a hearing, consideration of alternatives, written findings, and federal review for each closure order— would create an unworkable cycle of delay in North Carolina's A/N/D courts. As CRC itself acknowledges, delays in child welfare cases prolong uncertainty for children and families. *See* DE 1, ¶ 21 (citing A/N/D proceedings as "slow-moving" and "inefficient," and noting "unrelenting continuances."). This risk of disruption underscores why federal courts abstain under *O'Shea* and defer to state judicial discretion in managing state proceedings.

### B. *Younger* also requires federal courts to defer to ongoing state A/N/D cases.

Under *Younger,* federal courts should refrain from exercising jurisdiction if "(1) there is an ongoing state judicial proceeding that began prior to substantial progress in the federal proceeding, (2) that proceeding implicates important, substantial, or vital state interests, and (3) there is an adequate opportunity to raise constitutional challenges within the framework of the state judicial process." *Robinson v. Thomas*, 855 F.3d 278, 285 (4th Cir. 2017). *Younger* abstention is particularly applicable where state courts are exercising core judicial functions.

6

*See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 12–14 (1987). This case satisfies the *Younger* factors.

*Younger* abstention applies if the relief sought would "interfere with the execution of state court judgments," *Pennzoil Co.*, 481 U.S. at 12–14, and when state civil proceedings involve important state interests. *Moore v. Sims*, 442 U.S. 415, 423 (1979) ("Where a federal lawsuit seeks relief that would intrude into the state's ability to administer family law, *Younger* abstention applies.") *Younger* abstention extends to "state judicial functions, including court administration." *Sprint Communications, Inc.*, 571 U.S. at 78.

The Supreme Court has applied *Younger* abstention even when the federal plaintiff is not a direct party to the state litigation. *Younger* abstention is appropriate when the federal plaintiff's interests are "intertwined" with those of the state court litigation. *Hicks v. Miranda*, 422 U.S. 332, 248–49 (1975); *NOPSI*, 491 U.S. at 367–68. The Fourth Circuit reaffirmed that *Younger* applies when a federal plaintiff's requested relief would interfere with ongoing state judicial proceedings, even if they are not a party. *Robinson v. Thomas*, 855 F.3d 278, 285 (4th Cir. 2017).

Here, CRC's interest in A/N/D proceedings is intertwined with those of the children and parents [DE 1, ¶¶ 15, 16], and the requested relief would plainly interfere with the ongoing A/N/D proceedings. Accordingly, even though they are not a party to the ongoing state judicial proceedings, *Younger* applies.

CRC's complaint directly challenges Judge Walker's courtroom closure decisions in ongoing A/N/D cases, not systemic administrative practices. In doing so, CRC seeks federal intervention in each case where Judge Walker considers the case-specific § 7B-801(a) factors to determine whether to grant or deny a motion to close the courtroom for a particular

7

hearing. These interlocutory procedural rulings occur as part of a larger, ongoing A/N/D proceeding. Juvenile courts retain jurisdiction over A/N/D cases until the child is placed in a permanent home. N.C. Gen. Stat. § 7B-906.1. Since CRC seeks a prospective injunction, it would impact every A/N/D case moving forward, and thus interfere with an ongoing judicial function, rather than a past, completed proceeding.

Further, this lawsuit implicates how state judicial officials manage A/N/D courts, a well-recognized, strong state interest. *See Moore v. Sims*, 442 U.S. 415, 435 (1979) (requiring *Younger* abstention in case involving custody of allegedly abused children and explaining that "[f]amily relations are a traditional area of state concern"); *see also Harper v. Pub. Serv. Comm'n of W.VA.*, 396 F.3d 348, 352 (4th Cir. 2005). North Carolina's interest in child welfare is paramount—state courts oversee A/N/D cases to protect children's best interests, ensure parental rights are protected, and resolve abuse or neglect concerns. Moreover, § 7B-801 closure orders undoubtedly qualify as "being uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Communications, Inc.*, 571 U.S. at 78.

Finally, state courts provide an adequate forum for constitutional challenges. CRC could file a declaratory judgment action in state court bringing the same claim brought or here, or mounting a facial or as-applied challenge to § 7B-801. CRC could also file an extraordinary writ. In addition, if a party to the proceeding believes a courtroom closure order was improperly issued, the party may appeal for review of the closure order. *See e.g. Matter of L.D.*, 903 S.E.2d 480 (N.C. Ct. App. 2024); *Doe v. Doe*, 263 N.C. App. 68, 76 (2018). State courts are fully capable of adjudicating federal constitutional claims, and CRC's failure to utilize those avenues further weakens its case for federal intervention. *See Penzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987); *Moore*, 442 U.S. at 430.

8

## III. THE ELEVENTH AMENDMENT BARS CRC'S CLAIM AGAINST JUDGE WALKER

The Eleventh Amendment is a complete bar to suit against a state in federal court. *See, e.g., Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). A state's sovereign immunity extends to state officers acting in their official capacity. *Ballenger v. Owens*, 352 F.3d 842, 845 (4th Cir. 2003). After all, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Just "as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst State School & Hosp.*, 465 U.S. at 101–02; *Kitchen v. Upshaw*, 286 F.3d 179, 183–84 (4th Cir. 2002).

### A. CRC's claims do not fall within any exception to Eleventh Amendment immunity.

First, Congress has not abrogated the state's immunity, nor has the State of North Carolina has not consented to suit in federal court by any express waiver. *See Bright v. McClure*, 865 F.2d 623, 626 (4th Cir. 1989) (Eleventh Amendment immunity applies because "the Congress has made no move to impose § 1983 liabilities upon states, and North Carolina has done nothing to waive its immunity.").

The *Ex Parte Young* doctrine established a third, narrow exception to sovereign immunity to seek prospective relief against state officers who are charged with enforcing an unconstitutional state law. Under this doctrine, a plaintiff must sue an official who is "directly involved" in enforcing state laws and policies that are contrary to federal law. *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 332 (4th Cir. 2001). However, the *Ex Parte Young*

9

exception explicitly prohibits injunctions directed toward state judicial officers. "The difference between the power to enjoin an individual from doing certain things, and the power to enjoin courts from proceeding in their own way to exercise jurisdiction, is plain, and no power to do the latter exists . . . ." *Id.* The Supreme Court recently clarified the proper scope of *Ex Parte Young* as it applies to judges, when it observed that while *Ex Parte Young* is a "narrow exception" to a state's Eleventh Amendment sovereign immunity, "this traditional exception does not normally permit federal courts to issue injunctions against state-court judges or clerks." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). This is so because state-court judges "do not enforce state laws as executive officials," the true subjects of *Ex Parte Young* actions. Instead, state-court judges "work to resolve disputes between parties." *Id.* "'An injunction against a state court' or its 'machinery' would be a violation of the whole scheme of our Government." *Id.* (citing *Ex Parte Young*, 209 U.S. at 163).

CRC's request for injunctive relief against Sheriff Birkhead is an improper attempt to circumvent Judge Walker's Eleventh Amendment immunity. Here, CRC does not allege that N.C. Gen. Stat. § 7B-801 is unconstitutional but instead challenges Judge Walker's discretionary application of the law, which is protected by Eleventh Amendment immunity and judicial immunity. CRC cannot enjoin Judge Walker directly, and this Court should reject Plaintiff's attempt to use an injunction against the Sheriff to indirectly control Judge Walker's courtroom decisions.

## B. The Eleventh Amendment bars CRC's request for declaratory relief.

The Eleventh Amendment bars declaratory relief that functions as an advisory opinion seeking to dictate how a state official must act in future situations. *Green v. Mansour*, 474 U.S. 64, 73 (1985) ("The issuance of a declaratory judgment in this case would have much the

10

same effect as a full-fledged award of damages or an injunction—it would be an improper intrusion into the state's governmental affairs."); *McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014) (federal courts may not issue declaratory judgments that would effectively act as an ongoing advisory opinion on state judicial processes.)

CRC uses its disagreement with Judge Walker's application of § 7B-801 in handful of Durham County A/N/D cases to ask this Court to broadly declare that the First Amendment presumption of public access applies to A/N/D proceedings. [DE 1, p. 35] This declaration does not redress an ongoing violation, but is the type of general legal pronouncement which is barred by the Eleventh Amendment. *Pennhurst State School & Hosp.*, 465 U.S. at 106 (holding federal courts cannot issue declaratory relief controlling how state courts interpret their own legal procedures).

CRC also seeks a declaration about how Judge Walker must make future courtroom closure decisions. [DE 1, p 35]. CRC does not challenge an ongoing policy, but rather individual discretionary decisions made in specific A/N/D cases, amounting to a prohibited ongoing advisory opinion. The Eleventh Amendment bars this type of declaratory relief because it interferes with state sovereignty by preemptively directing state officials on how to govern. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

**C.** *Ex Parte Young* **does not apply because CRC is not challenging an ongoing violation.**

While it is true that the Eleventh Amendment does not bar suits seeking prospective relief to stop an ongoing violation of federal law, *Ex Parte Young*, 209 U.S. 123, 159-60 (1908), the violation must be continuous and ongoing and the relief must be necessary to stop an actual,

11

imminent violation, not just an anticipated or speculative one. *Ex Parte Young* does not apply here for several reasons.

First, CRC's request does not address an ongoing violation. The *Ex Parte Young* exception does not apply when the requested relief is not necessary to stop a present and continuous violation but rather seeks to regulate potential future conduct. *Jemsek v. Rhyne*, 662 F. App'x 206, 211 (4th Cir. 2016) ("even though the consequences of any past violation may persist, invoking those effects does not transform past state action into an ongoing violation.") CRC's concern is speculative—it assumes that future dependency hearings will be closed in a constitutionally deficient manner. This is not the kind of "ongoing violation" necessary for *Ex Parte Young* to apply.

Second, CRC's request for preemptive federal oversight of Judge Walker's A/N/D courtroom is simply not permitted under *Ex Parte Young*. The Fourth Circuit has limited *Ex Parte Young* to cases where the relief directly redresses an ongoing harm. But *Ex Parte Young* does not apply where relief would require a federal court to oversee state procedures on an ongoing basis. *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). CRC does not challenge a specific, ongoing policy. Instead, it seeks to impose federal procedural requirements on state judicial proceedings. Accordingly, the requested relief falls outside *Ex Parte Young* and is therefore barred by the Eleventh Amendment.

## IV. JUDGE WALKER IS ENTITLED TO JUDICIAL IMMUNITY

Judicial immunity bars any suit against a judicial officer arising out of his or her judicial acts. *See, e.g., Forrester v. White*, 484 U.S. 219, 227–29 (1988); *Stump v. Sparkman*, 435 U.S. 349, 360, 362 (1978). A judge is absolutely immune from liability for judicial acts even if he commits grave procedural errors. *Stump*, 435 U.S. at 359. Two conditions must be

present to trigger judicial immunity. Judicial officials must act in their judicial capacities and not "in the complete absence of jurisdiction." *King v. Myers*, 973 F.2d 354, 356–57 (4th Cir. 1992). These requirements are satisfied here.

The issuance of a § 7B-801 closure order satisfies the judicial capacity requirement; it's a core judicial function. And because § 7B-801 gives Judge Walker the discretion to close an A/N/D hearing without making the findings CRC requests, Judge Walker was within her jurisdiction and acting pursuant to lawful authority.

The doctrine of judicial immunity specifically applies to bar actions against judicial officials brought under 42 U.S.C. § 1983. *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967); *Mireles*, 502 U.S. at 13; *Forrester*, 484 U.S. at 229. In addition to prohibiting a suit for money damages against judges, absolute judicial immunity bars injunctive relief. *Donato Malave v. Abrams*, 547 F. App'x 346, 347 (4th Cir. 2013). While judicial immunity does not categorically bar prospective declaratory relief, declaratory relief is discretionary and courts should deny such relief when it serves no useful purpose or improperly interferes with judicial discretion. *Foster v. Fisher*, 694 F. App'x 887, 889 (4th Cir. 2017). The circumstances in this case warrant denial of such relief.

CRC seeks a broad declaration that would constrain Judge Walker's future courtroom closure decisions, which would effectively dictate how she must apply § 7B-801 in every case going forward. Under O'Shea, federal court should abstain from granting this type of relief. The requested declaratory judgments would entangle federal courts in state courtroom management and interfere with judicial discretion. This Court should exercise its discretion to deny declaratory relief.

## V. CRC LACKS STANDING AND ITS CLAIMS ARE NOT RIPE

The doctrine of standing ensures that a plaintiff has "a personal stake in the outcome." *Gill v. Whitford*, 585 U.S. 48, 54 (2018). To establish organizational standing, a plaintiff-organization "must adequately allege that (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013) (quotations omitted); *see Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 393–94 (2024); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

A particularized injury must affect the plaintiff in a personal and individual way. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 n.1 (1992). A concrete injury must be both qualitatively and temporally real, not merely abstract. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). To establish injury, an organization must show that the defendant's action significantly and perceptively impaired its mission. *Hippocratic Med.*, 602 U.S. at 395–96. An organization must demonstrate "far more than simply a setback" to its abstract social interests. *Hippocratic Med.*, 602 U.S. at 394 (*citing Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)).

Additionally, mere diversion of resources does not suffice for injury unless it responds to a direct threat to the organization's core mission. *Republican Nat'l Comm. v. N. Carolina State Bd. of Elections*, 120 F.4th 390, 396 (4th Cir. 2024). An organization cannot "spend its way into standing" simply by allocating resources to oppose the defendant's action. *Id.* at 394.

14

Anticipatory expenditures based on speculative harm do not constitute an injury in fact. *Wild Virginia v. Council on Env't Quality*, 56 F.4th 281, 300 (4th Cir. 2022).

Even in First Amendment cases, a plaintiff must demonstrate a direct impact, not merely ideological disagreement with government policy. *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 485 (1982). Merely alleging a First Amendment violation does not establish standing. A plaintiff must show a real, particularized injury beyond an abstract assertion of rights. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

CRC does not allege an injury sufficient to confer standing. CRC fails to allege that its mission has been significantly or perceptibly impaired. CRC asserts that Judge Walker's § 7B-801 closure orders in juvenile cases have resulted in its staff traveling "repeatedly to Durham, at significant expense" and that exclusion from hearings obstructs its ability to investigate civil rights violations. [DE 13, p. 14]. However, its decision to spend money sending its attorneys to observe court proceedings to learn "how judicial officers apply legal standards and make discretionary decisions" is insufficient to confer standing. This is precisely the type of abstract frustration of purpose and discretionary spending that courts have found inadequate. *Havens Realty Corp.*, 455 U.S. at 379; *Lane v. Holder*, 703 F.3d 668, 675 (4th Cir. 2012).

The Supreme Court has held that standing requires more than generalized grievances about government action. *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220 (1974) ("A plaintiff must have a personal stake in the outcome, and generalized grievances about government actions are not enough."). CRC's interest in observing court proceedings as an advocacy group is distinct from an individual's legally protected right to access specific legal proceedings. The mere fact that some hearings were closed does not establish direct and

particularized injury, and CRC's claim of governmental encroachment of an unrecognized First Amendment right is too abstract without evidence of concrete harm.

CRC's claim is also not ripe for adjudication. Ripeness is a justiciability doctrine that prevents courts from engaging in premature disputes. *Clayland Farm Enterprises, LLC v. Talbot Cnty., Maryland*, 672 F. App'x 240, 243–44 (4th Cir. 2016). A case is ripe when it presents a final, concrete controversy, not one dependent on uncertain future events. *See In re Naranjo*, 768 F.3d 332, 347 (4th Cir. 2014) (claims were ripe because they did not depend on future uncertainties); *see also Kentucky Press Ass'n, Inc. v. Kentucky*, 454 F.3d 505 (6th Cir. 2006) (First Amendment court access claim was unripe because press association had not sought access through Kentucky courts and future harm was speculative).

Courtroom closures for particular hearing are a procedural issue decided on a case-by-case basis, not a categorical policy requiring federal intervention. *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608 (1975) (holding that federal courts should not interfere when state courts can resolve constitutional issues themselves). CRC's claim hinges on future judicial decisions in specific cases. CRC's only allegations regarding future harm is that it intends to continue to attempt to observe Judge Walker's courtroom during the remainder of 2024 and 2025. [DE 1, ¶ 32] However, because § 7B-801 does not categorically bar public access, CRC CRC's claim is dependent on uncertain future events – future closure orders entered in specific cases where CRC is present. [DE 1, ¶ 32] Because this claim hinges on future uncertainties, it is not ripe.

This case should be dismissed because CRC fails to establish organizational standing because it has not shown a concrete, particularized injury affecting its core mission. Its claim

16

is unripe because it seeks federal intervention in an ongoing state judicial process based on speculative future harm.

## VI.    THERE IS NO FIRST AMENDMENT RIGHT OF UNQUALIFIED PUBLIC ACCESS TO A/N/D PROCEEDINGS

CRC's claim that the First Amendment provides a right of public access to A/N/D proceedings is unsupported by legal precedent. The Supreme Court has never recognized such a right, and the historical and functional arguments advanced by CRC fail under the two-prong "experience and logic" test established in *Press-Enter. Co. v. Superior Ct. of California for Riverside Cnty.*, 478 U.S. 1 (1986). CRC's assertion of a historical tradition of public access to A/N/D proceedings is inaccurate and inconsistent with legal precedent recognizing the long-standing practice of confidential juvenile proceedings.

### A. The Supreme Court has never recognized a First Amendment right of public access to A/N/D Proceedings.

The Supreme Court has repeatedly held that the right of public access to judicial proceedings is not absolute and depends on historical openness and the functional role of access in a particular type of proceeding. *Press-Enterprise Co.*, 478 U.S. at 8–9. To evaluate whether a First Amendment right of access exists to a judicial proceeding or record, courts apply the "experience and logic" test. *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 326 (4th Cir. 2021) (relying on *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980)). The test requires courts to assess two factors: (1) whether the type of proceeding or record in question has historically been open to the public; and (2) whether public access would play a positive role in the functioning of the proceeding or process. *Schaefer*, 2 F.4th at 326. Both prongs of the test must be satisfied to establish a First Amendment right of public court access. *Id.*

17

CRC's reliance on anecdotal evidence of occasional public access to certain proceedings does not establish a broad historical tradition of open A/N/D hearings. The relevant legal history overwhelmingly supports the conclusion that juvenile A/N/D courts have not historically been open to the press and public, with numerous courts noting that these proceedings have been closed to protect the privacy and welfare of children. *See in re Gault*, 387 U.S. 1, 14 (1967); *McKeiver v. Pennsylvania*, 403 U.S. 528, 545 (1971); *Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 107 (1979); *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 606 (1982). The Supreme Court has repeatedly emphasized that states retain discretion to close proceedings on a case-by-case basis, provided they articulate a compelling justification—a standard that North Carolina's statutory framework already satisfies. *Id.* at 607–08.

There are no federal corollaries to state A/N/D courts because "family relations are a traditional area of state concern." *Moore*, 442 U.S. at 435. However, federal courts have consistently declined to recognize a First Amendment right of access to federal juvenile delinquency proceedings, reinforcing that public access is not constitutionally required. *See United States v. Three Juvs.*, 61 F.3d 86, 92 (1st Cir. 1995); *Hartford Courant Co., LLC v. Carroll*, 986 F.3d 211, 220 (2d Cir. 2021); *United States v. Under Seal*, 853 F.3d 706, 713 (4th Cir. 2017). When federal courts have considered whether the First Amendment provides a public right of access to state juvenile proceedings, they have likewise declined to announce any such right. *See e.g., Kentucky Press Ass'n, Inc. v. Kentucky*, 355 F. Supp. 2d 853, 865 (E.D. Ky. 2005).

Congress has also prioritized the confidentiality of child welfare by conditioning federal funding on states implementing confidentiality protections for records and

18

proceedings related to child welfare cases. *See* 42 U.S.C. § 671(c).[2] In the face of this Congressional mandate, judicial policymaking to the contrary is inappropriate. *See United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 727 (1979) (explaining that federal courts should create a federal rule of decision only "when Congress has not spoken"). In sum, both the Supreme Court and Congress recognize the logic in protecting juveniles during intrusive court proceedings.

A district court within the Fourth Circuit explicitly rejected the claim that members of the public have a constitutional right to attend juvenile and domestic relations court proceedings, reinforcing the long-standing principle that such proceedings have historically been closed and that confidentiality serves a compelling government interest. *See Briggman v. Burton*, 2016 U.S. Dist. LEXIS 133712 (W.D. Va. Sept. 27, 2016). In *Briggman*, the plaintiff alleged that the judges violated the First Amendment by barring him from observing juvenile and domestic relations courts proceedings in cases where he was not a party. *Id*. Citing *Kentucky Press Ass'n, Inc. v. Kentucky*, 355 F. Supp. 2d 853, 865 (E.D. Ky. 2005), the court reaffirmed that "juvenile proceedings have historically been closed to the public" and that the First Amendment does not provide a right of access to these proceedings. *Id*. at *12-13.

Not only did *Briggman* confirm that the historical record overwhelmingly supports closure of these proceedings, it also confirms that public access does not play a significant role in the functioning of juvenile courts. Instead, the court found that public access interferes with the core functions of juvenile courts, which is to protect children and families, not to conduct public trials. *Id*. at *13.

---

[2] 42 U.S.C. § 671 (c) is part of the Social Security Act's Title IV-E program, which provides federal funding for state foster care and child welfare services.

CRC does not satisfy the logic prong because A/N/D proceedings are focused on resolving private individualized family matters, and public oversight is not as critical as in other contexts. First, juveniles involved in A/N/D proceedings did not choose to become involved in a court proceeding, nor are they responsible for the alleged actions that resulted in the proceeding. Second, confidentiality helps protect the privacy and dignity of the parties involved and fosters the integrity of the judicial process. When a court finds that a § 7B-801 closure is necessary, children and families are at ease to disclose deeply personal and sensitive information related to mental health, substance abuse, physical and sexual abuse, and medical information, that if made public, could cause embarrassment, stigma and emotional harm. Disclosure could also have long-lasting negative impacts on children's well-being and families, particularly when information is posted on the internet and social media. Families may be discouraged from engaging in court-ordered services, and chilled from reporting abuse or neglect. Moreover, other safeguards are already in place – every party in an A/N/D case is represented by their own attorney, including the best interests of the child. Finally, decisions in A/N/D proceedings are appealable to the North Carolina Court of Appeals where published opinions are rendered

This assessment is wholly consistent with the recognition by North Carolina federal district courts of the need to preserve confidential juvenile state court records entered into the record of a non-juvenile federal case. *See e.g. Rhoads v. Guilford Cty.*, No. 1:23-CV-854, 2024 U.S. Dist. LEXIS 175201, at *4 n.2 (M.D.N.C. Sep. 27, 2024) (in context of motion to seal documents filed in support of motion to dismiss, "North Carolina law protects the interests of minors by providing that the records of certain juvenile cases, including those relating to dependency, be withheld from public inspection and may be examined only by order of the

20

court."); *Vang v. Ashby*, No. 1:18cv565, 2020 U.S. Dist. LEXIS 177321, at *7 (M.D.N.C. Sep. 28, 2020) (granting motion to seal portions of exhibits in civil matter that contained material subject to North Carolina's juvenile confidentiality laws); *Sahoo v. Gleaton*, No. 5:16-CV-00153-F, 2017 U.S. Dist. LEXIS 9299, at *5-6 (E.D.N.C. Jan. 24, 2017) (collecting cases); *Brunson v. N.C. Dep't of Soc. Servs.*, No. 5:09-CT-03063-FL, 2013 U.S. Dist. LEXIS 58397, (E.D.N.C. Apr. 24, 2013) (granting protective order to preserve confidentiality of North Carolina juvenile records).

CRC's claim should be dismissed because it fails to satisfy both the experience and logic prongs necessary to state a First Amendment access claim.

## VII. NORTH CAROLINA'S STATUTORY FRAMEWORK ALREADY SATISFIES THE FIRST AMENDMENT AND IS NOT CHALLENGED

CRC's request for declaratory and injunctive relief also fails to state a claim because North Carolina's statutory framework governing courtroom access in A/N/D proceedings already complies with the First Amendment. Importantly, CRC does not acknowledge § 7B-801 or challenge its constitutionality. Consequently, it cannot claim that North Carolina's framework is unconstitutional or requires federal intervention. CRC's request for federal intervention in individual courtroom closure orders is both improper and unnecessary and serves to highlight CRC's real grievance – that it disagrees with how Judge Walker exercises her discretion under § 7B-801 – which is an improper request for federal oversight of state judicial discretion rather than a legitimate constitutional challenge.

N.C. Gen. Stat. § 7B-801(a) establishes a clear presumption of openness—A/N/D proceedings start from a default position of public access and are only closed when a judge considers specific findings justifying closure. CRC's request for mandatory findings,

21

consideration of alternatives, and procedural safeguards is unnecessary. Because CRC does not challenge the constitutionality of § 7B-801 itself, it has no valid basis for demanding federal intervention in its discretionary application by judges. CRC's demand for additional procedural protections is unwarranted because the current statutory framework already aligns with Supreme Court precedent.

## CONCLUSION

For these reasons, the Court should dismiss CRC's claim against Judge Walker.


Respectfully submitted, this the 13th day of February, 2025.

JEFF JACKSON
Attorney General

/s/Elizabeth Curran O'Brien
Elizabeth Curran O'Brien
N.C. State Bar No. 28885
Special Deputy Attorney General
P.O. Box 629
Raleigh, NC 27602-0629
Telephone: (919) 716-0091
Facsimile: (919) 716-6755
eobrien@ncdoj.gov
*Counsel for Defendant Judge Walker*

22

## CERTIFICATE OF WORD COUNT

I hereby certify that this brief, including the body of the brief, headings and footnotes, but excluding the caption, signature lines, certificates of service, and any cover page or index not included, does not exceed the 6,250 word limit on briefs supporting motions and responsive briefs. See LR 7.3(d)(1).

/s/ Elizabeth Curran O'Brien
Special Deputy Attorney General

Case 1:24-cv-00943-UA-JLW    Document 66    Filed 02/13/25    Page 23 of 23