**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
NO. 1:24-cv-00943**

| | |
|---|---|
| CIVIL RIGHTS CORPS, | |
| Plaintiff, | |
| v. | **BRIEF IN SUPPORT OF INTERVENOR-DEFENDANT'S MOTION TO DISMISS** |
| JUDGE DORETTA L. WALKER, in her official capacity, and CLARENCE F. BIRKHEAD, in his official capacity, | |
| Defendants | |

Proposed-Intervenor Defendant the North Carolina Administrative Office of the Courts on behalf of its Office of Guardian ad Litem Services (collectively, the "GAL Program") files this brief in support of its motion to dismiss Plaintiff's Complaint.

The only two claims for relief in Plaintiff's complaint are for First Amendment access to abuse/neglect/dependency ("A/N/D") proceedings. But third parties have no First Amendment right to access A/N/D proceedings or the deeply personal and sensitive information disclosed in them. Accordingly, Plaintiff has failed to state a claim upon which relief can be granted.

Moreover, Plaintiff's lawsuit runs into two threshold problems. First, Plaintiff has no standing to pursue these claims. Second, federalism prevents federal courts from interfering with state-court decisions. If Plaintiff wants to challenge actions taken by the Durham County District Court, Plaintiff should use the state-court procedures available to do so. This Court is not the proper forum.

Each of these reasons is an independent basis for dismissal.

## NATURE OF THE MATTER

Plaintiff Civil Rights Corps, an advocacy law firm, filed the Complaint in this matter seeking declaratory and injunctive relief regarding Defendant Judge Walker's ability (through Defendant Sheriff Birkhead) to close A/N/D proceedings to the public. (D.E. 1).

The GAL Program has moved to intervene as a defendant because guardians ad litem ("GALs") regularly (and are statutorily obligated at times to) move for closure of A/N/D hearings to protect a child's interests. (D.E. 42). That motion to intervene remains pending.

Still, the GAL Program moves to dismiss Plaintiff's Complaint out of an abundance of caution—contingent on intervention being granted at a later date.

## STATEMENT OF FACTS[1]

Plaintiff alleges that "[t]he history of access to dependency courts in North Carolina is not a history of closure to the public, but rather a history of general openness to the public." (D.E. 1 at 22). Plaintiff premises its claims for relief on this allegation regarding the history and logic of A/N/D proceedings. Thus, the nature of A/N/D proceedings is pertinent.

---

[1] This recitation of facts is taken from the allegations of Plaintiff's Complaint (only taken as true for the purpose of this motion) and the North Carolina General Statutes. However, the GAL Program notes that the factual record has been developed in connection with Plaintiff's motion for preliminary injunction and the responses thereto.

2

"District Court Judges in North Carolina have jurisdiction to hear certain civil, criminal, and juvenile cases. The court's juvenile jurisdiction includes both delinquency cases (i.e., proceedings during which a child is charged with conduct that would be considered a crime if the child were an adult), as well as" A/N/D proceedings. (*Id.* at 6).

The North Carolina General Assembly has recognized that juveniles' best interests are served by keeping the court records in A/N/D proceedings and related social services records sealed, absent certain exceptions. *See* N.C. Gen. Stat. §§ 7B-302 (requiring "[a]ll information" received by the department of social services . . . be held in strictest confidence"), -601(c) ("[N]o disclosure of any information or reports shall be made to anyone except by order of the court or unless otherwise provided by law."), -2901 (providing that juvenile records "shall be withheld from public inspection" and "may be examined only by order of the court"). "According to state law and policy, decisions to close the courts for a particular court proceeding are supposed to be made on a case-by-case basis." (D.E. 1 at 23). This determination is legislatively permitted once the trial court considers several factors, including the "benefit to the juvenile of confidentiality" and the "extent to which the confidentiality afforded the juvenile" under the North Carolina General Statutes would "be compromised by an open hearing." N.C. Gen. Stat. § 7B-801(a).

Plaintiff is a "civil rights law firm" based in Washington, D.C. (D.E. 1 at 1); *see also* https://civilrightscorps.org/. According to the Complaint, Plaintiff "has been barred

3

from observing" certain A/N/D proceedings, "without any opportunity to be heard or even an ability to obtain a transcript of the exclusion orders." (D.E. 1 at 2).

## QUESTIONS PRESENTED

1. Should Plaintiff's Complaint be dismissed for lack of standing?

2. Should Plaintiff's Complaint be dismissed as an improper attempt to interfere with state-court decisions?

3. Should Plaintiff's Complaint be dismissed because the First Amendment does not provide unfettered access to A/N/D proceedings?

## ARGUMENT

Plaintiff has no standing to pursue its claims for prospective relief because it only alleges hypothetical future harm. On top of that, the *Rooker-Feldman* doctrine prevents this Court from interfering with state-court decisions—the very relief Plaintiff requests.

On the merits, Plaintiff's legal claims depend upon the existence of a First Amendment right to access A/N/D proceedings. However, there is no First Amendment right for third parties to access such proceedings. The Complaint thus fails to state a plausible claim for relief.

## I. Legal Standards

### A. Subject matter jurisdiction

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Murthy v. Missouri*, 144 S. Ct. 1972, 1985 (2024). "A proper case or controversy exists only when at least one plaintiff establishes that [it] has standing to sue."

4

*Id.* "The party attempting to invoke federal jurisdiction bears the burden of establishing standing." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006).

### B. Failure to state a claim

To survive a motion to dismiss on the merits, a plaintiff "must state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). Nor will "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see also E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

Put simply: if a complaint "lacks a cognizable legal theory," it should be dismissed. *Cap. Associated Indus., Inc. v. Cooper*, 129 F. Supp. 3d 281, 300 (M.D.N.C. 2015).

## II. Plaintiff Lacks Standing to Bring These Claims.

Although its members were allegedly excluded from some hearings, it is Plaintiff—a "civil rights organization," (D.E. 1 ¶ 12)—that seeks to vindicate its rights in this lawsuit, (*e.g.*, *id.* ¶¶ 1 ("This lawsuit challenges Defendants' repeated denial of Plaintiff Civil Rights Corps' First Amendment right . . . ."), 9 (similar), 81 (similar)). The distinction is

5

important because Article III requires different showings for an organization's own standing to sue as compared to an organization's standing to sue on behalf of its members. *See, e.g.*, *N.C. All. for Retired Ams. v. Hirsch*, --- F.Supp.3d ---, ---, 2024 WL 3507677, at *2 (E.D.N.C. 2024) (distinguishing between "'organizational' standing" and "'associational' standing"). Taking the Complaint's allegations as true, Plaintiff appears to rely on organizational standing (and should not be allowed to post-facto rely on a theory of associational standing).

Like any litigant in federal court, an organization may establish standing by showing "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Srvs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Plaintiff cannot establish an organizational injury in fact, nor would its requested relief redress any such injury.

Though Plaintiff describes a few past instances of alleged court closures, its requested relief is only prospective: declarations and an injunction. (D.E. 1 at 35 (requesting a declaration that "Defendants **will** violate [CRC's] rights" if they take certain action and an injunction "prohibiting" Sheriff Birkhead from taking certain future action); *see also AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67, 75 (2021) ("[An] injunction typically

offers prospective relief against ongoing or future harm" (quotation omitted); *In re United States*, No. 24-684, 2024 WL 5102489, at *2 (9th Cir. May 1, 2024) ("Declaratory relief is prospective.").

Thus, the relevant injury is that future harm Plaintiff alleges. *See Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018) ("[B]ecause plaintiffs here seek declaratory and injunctive relief, they must establish an ongoing or future injury in fact."). And alleged "[p]ast exposure to illegal conduct does not in itself show a present case or controversy" unless "[]accompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

An alleged "future injury may suffice if the threatened injury is **certainly impending**, or there is a substantial risk that the harm will occur." *Kenny*, 885 F.3d at 287. But "allegations of **possible** future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotation omitted).

Specifically, plaintiffs "must show (1) that it is likely that they again will find themselves in the same or similar circumstances giving rise to the allegedly unconstitutional conduct; **and** (2) that it is likely that they again will be subjected to the allegedly unconstitutional conduct." *N.A.A.C.P. v. Brackett*, 130 F. App'x 648, 652 (4th Cir. 2005) (quotation omitted). Relatedly, declaratory judgments "require that the dispute be definite and concrete and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*,

7

549 U.S. 118, 127 (2007) (cleaned up).[2]  And as an organization, Plaintiff must show more than a frustration of "its stated organizational purpose" but also a "'consequent drain on [its] resources.'"  *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 183 (4th Cir. 2013).

Here, Plaintiff's actual requests for relief ask that certain procedures be followed— not that any actor be enjoined from closing the court to Plaintiff.  Thus, the true inquiry for the purpose of standing is whether it is certainly impending that Plaintiff will be prohibited from a closed courtroom without following (allegedly) required procedures.[3]

In that regard, all Plaintiff alleges is that "without the relief sought in this lawsuit, [Plaintiff] will continue to be barred in violation of the First Amendment."  (D.E. 1 ¶ 2).  That is the only injury Plaintiff identifies to support a claim for declaratory relief based on hypothetical facts.  (*See id.* at 35 (seeking a declaration that "Defendants **will** violate [Plaintiff's rights] . . . **if**" they take certain actions)).  But even on the facts alleged in the Complaint, all Plaintiff has is *possible* future injury, not certainly impending injury.  And

---

[2] Plaintiff's ability to seek relief in state-court proceedings, *see, e.g.*, *C.R. Corps v. Walker*, No. P23-757 (N.C. Ct. App. Feb. 21, 2024), https://appellate.nccourts.org/orders.php?t=&court=2&id=426384&pdf=1&a=0&docket=1&dev=1 (granting Plaintiff's petition for mandamus), further makes any declaratory relief inappropriate. *See Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996) ("[W]hen a related state proceeding is underway, a court considering a declaratory judgment action should specifically consider whether the controversy can better be settled in the proceeding pending in the state court." (quotation omitted).

[3] Despite repeatedly asking for relief to include the "opportunity to be heard" before a courtroom is closed, (*e.g.*, D.E. 1 at 35), Plaintiff makes no allegation about how or why the First Amendment requires such.

this lack of injury is even more clear on the facts elicited as part of the briefing on Plaintiff's motion for preliminary injunction. *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005) (explaining that when analyzing standing, a court can consider evidence outside the pleadings).

It is only *possible,* rather than likely, that Plaintiff will be prohibited from a closed courtroom. Take Plaintiff's allegations, divorced from rhetoric and conclusions: A/N/D proceedings are sometimes closed, (D.E. 1 ¶ 7 (alleging the courtroom is "often" open), "sometimes," but not always, third parties are allowed to remain in closed court rooms, (*id.* ¶¶ 7, 27 ("some occasions")), and Plaintiff's members have been allowed to sit in on some hearings, (*id.* ¶ 30). That does not show certainly impending injury.

Further, the period during which Plaintiff itself contended it actually planned to "courtwatch[]," January 2025, (D.E. 13 at 8), has already passed, and Judge Walker did not preside over any dependency hearing during those times, (*see* D.E. 35-1 at 2). The clarified factual record, (*see* D.E. 52, 52-1, 52-2), also makes clear that Judge Walker does not order (and therefore Sheriff Birkhead does not enforce) closures in most or even a significant number of cases and that the general practice (and therefore the likely outcome) is that N.C. Gen. Stat. § 7B-801(a)–(b) procedures are complied with before closing court, (D.E. 52 at 18; D.E. 52-1 ¶¶ 13-16). Plaintiff does not allege that these procedures fail to satisfy the requirement of "specific, on the record findings . . . demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest," *Press-Enter. Co. v. Superior Ct.*, 478 U.S. 1, 13 (1986); (*see also* D.E. 62 at 13 (explaining that

9

Plaintiff "does not challenge" N.C. Gen. Stat. § 7B-801)). Accordingly, even if a courtroom might be closed in the future, Plaintiff has not adequately alleged that the closure would violate Plaintiff's rights.

Further, the lack of allegations about deficiencies in these statutory procedures, which are seemingly being complied with, means that Plaintiff's requested relief of new procedures would not actually "redress" the First Amendment injury alleged.

In addition, Plaintiff has failed to show that *it* would suffer any cognizable harm from a hypothetical future closure. Accepting for this motion that closure impairs some "organizational purpose" of Plaintiff, this impairment, "without more, does not provide a basis for standing." *S. Walk*, 713 F.3d at 183. Plaintiff has not concretely or cogently put forth any "consequent drain on [its] resources," *id.*, beyond mere conclusory allegations. Even crediting Plaintiff's implied resource expenditure on individuals traveling from "D.C., Baltimore, New York, Chicago, and Texas," (D.E. 13 at 12), to view proceedings in North Carolina, that would be Plaintiff's "uncompelled choice to expend resources"— which is legally insufficient for standing. *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 396 (4th Cir. 2024).

At base, Plaintiff's allegations, stripped of legal conclusions and viewed in light of the factual record, demonstrate at best a hypothetical, and not certainly impending, unconstitutional impairment to anyone's rights—let alone one inuring to Plaintiff itself.

10

### III. Plaintiff Improperly Asks This Court to Interfere with State-Court Decisions.

As a separate an independent ground for dismissal, awarding Plaintiff's requested relief would violate principles announced in the paired decisions of *Rooker* and *Feldman*. Specifically, to the extent Plaintiff seeks a declaratory judgment that *past* state-court actions violated Plaintiff's constitutional rights, this Court lacks jurisdiction over such claims.

In *Rooker v. Fidelity Trust Co.*, the Supreme Court held that federal courts lack jurisdiction to consider claims attempting to get rid of judgments entered by state courts. 263 U.S. 413, 416 (1923). In *D.C. Court of Appeals v. Feldman*, the Supreme Court recognized that even if a state-court proceeding has not resulted in a final judgment, plaintiffs cannot use federal courts to contest it. 460 U.S. 462, 481 (1983). From these two cases, a principle of federal jurisdiction developed known as the *Rooker-Feldman* doctrine. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).

According to Plaintiff, at a few distinct hearings, in a few distinct cases, Judge Walker allegedly did not allow Plaintiff's members to stay in the courtroom. (*See* D.E. 1 at 12-15). Plaintiff has now brought a federal lawsuit asking this Court to pass judgment on those state-court orders and determine that they were improper—all in a way to control current, ongoing proceedings.

The *Rooker-Feldman* doctrine prevents such suits. When a litigant "institutes a federal action which, although not styled as an appeal, amounts to nothing more than an attempt to seek review of the state court's decision by a lower federal court,'" *Rooker-*

11

*Feldman* requires its dismissal. *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003) (cleaned up); *Boyce v. Dembe*, 47 F. App'x 155, 158 (3d Cir. 2002) (explaining that when a complaint "is better characterized as a skillful attempt to mask the true purpose of the action, which essentially is to reverse the judicial decision,'" the *Rooker-Feldman* requires dismissal (quotation omitted)).

For instance, in *Boyce*, the plaintiff was held in contempt after unsuccessfully requesting a state-court judge to recuse himself. 47 F. App'x at 157. The plaintiff filed a new action in federal court, alleging "a laundry list of violations of due process and of equal protection." *Id.* While the plaintiff requested declaratory relief, and tried to characterize her complaint as "simply challenging relevant 'rules and procedures,'" a closer examination revealed that the plaintiff was "primarily challenging the allegedly unconstitutional 'practice' and 'acts' to which she was subjected." *Id.* at 160. Her claims for relief boiled down to a request that the federal court "rule 'that the state court was wrong.'" *Id.* (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring in the judgment)). Recognizing that the *Rooker-Feldman* doctrine barred such claims, the Third Circuit refused to honor such a request.

The same reasoning applies here. Plaintiff's Complaint is based on allegations of previous orders that happened in cases that are apparently still pending in state court. (*See* D.E. 1 at 12-15). At its core, Plaintiff's Complaint "seeks the federal district court to review [] state court decision[s] and thus pass upon the merits of th[ose] state court decision[s]" and issue prospective declaratory and injunctive relief based on that review.

*See Jordahl v. Democratic Party*, 122 F.3d 192, 202 (4th Cir. 1997). As such, Plaintiff's "constitutional claims … are inextricably intertwined with the state court's denial in a judicial proceeding … [and] the district court is in essence being called upon to review the state-court decision." *Feldman*, 460 U.S. at 482 n. 16. The *Rooker-Feldman* doctrine bars this review.

Even more ironically, Plaintiff is aware of avenues to challenge decisions made in state-court proceedings—and has even succeeded. *See C.R. Corps*, No. P23-757, *supra*. Plaintiff has options available to it if it feels that it is being wronged in state-court proceedings; a federal lawsuit is not one of them.

Notably, the *Rooker-Feldman* doctrine applies equally to interlocutory rulings in ongoing actions as it does to decisions in closed ones. *See RLR Inv., LLC v. City of Pigeon Forge*, 4 F.4th 380 (6th Cir. 2021).[4] The only harm Plaintiff alleges is that it was unconstitutionally deprived access to hearings in certain A/N/D proceedings. Plaintiff has not alleged that those cases are concluded. But even if they were not, a decision on

_____

[4] As discussed by the other Defendants, the Court should alternatively abstain from hearing Plaintiff's claims. *See O'Shea v. Littleton*, 414 U.S. 488 (1974) (declining jurisdiction over suits seeking "an ongoing federal audit of state . . . proceedings"); *Younger v. Harris*, 401 U.S. 37 (1971) (explaining abstention); *see also Robinson v. Thomas*, 855 F.3d 278, 285 (4th Cir. 2017) (explaining that federal courts should abstain when there is a related "ongoing state judicial proceeding that began prior to substantial progress in the federal proceeding, (2) that proceeding implicates important, substantial, or vital state interests, and (3) there is an adequate opportunity to raise constitutional challenges within the framework of the state judicial process").

13

Plaintiff's access to those hearings would be interlocutory and still improper for review by this Court. *See id.*

In sum, this Court should decline Plaintiff's invitation to have the federal judiciary interfere with state-court proceedings. Plaintiff's Complaint should be dismissed for this reason as well.

## IV. On the Merits, Plaintiff's Claims Fail as a Matter of Law Because Third Parties Do Not Have a First Amendment Right to Access A/N/D Proceedings.[5]

Plaintiff seeks a declaratory judgment that Defendants "will violate Civil Rights Corps' rights under the First Amendment if Defendants deny Civil Rights Corps access to dependency proceedings without an opportunity to be heard." (D.E. 1 at 35; *see also id.* (seeking to enjoying Sheriff Birkhead from so denying Plaintiff's rights)). This request is premised on the erroneous assumption that Plaintiff has a First Amendment right to access those proceedings. Neither history nor logic requires that the public receive unfettered access to the most intimate and sensitive details of traumatized children. Nor can such a conception of the First Amendment be squared with the text's original meaning.

The Supreme Court has limited the right of public access to only those court proceedings (1) that have a "tradition of accessibility" and (2) that "public access plays a significant role in the functioning of." *Press-Enter.*, 478 U.S. at 8 (quoting *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 605 (1982)). As a shorthand, the Supreme

---

[5] This argument largely mirrors the discussion in the GAL Program's opposition to Plaintiff's motion for preliminary injunction. Rather than incorporate by reference, the GAL Program repeats the argument here for the Court's convenience.

Court refers to these inquiries as the "tests of experience and logic." *Id.* at 9. Plaintiff's attempt to apply these tests to A/N/D proceedings comes up short.

The history test weighs heavily against Plaintiff. Numerous courts—state and federal—have held that "there is no overarching First Amendment right to unfettered access to juvenile court proceedings," particularly A/N/D proceedings. *Pack v. Kings Cnty. Hum. Servs. Agency*, 89 Cal. App. 4th 821, 832 (2001); *see also, e.g.*, *Ky. Press Ass'n v. Kentucky*, 355 F. Supp. 2d 853, 864 (E.D. Ky. 2005) ("[J]uvenile proceedings and records have been historically closed to the public."); *San Bernardino Cnty. Dep't of Pub. Soc. Servs. v. Superior Ct.*, 232 Cal. App. 3d 188, 197 (1991) ("[T]he history of juvenile courts is one of closed proceedings . . . ."); *Tower v. Leslie-Brown*, 167 F. Supp. 2d 399, 405 (D. Me. 2001) (recognizing the "traditional confidentiality of child protective proceedings"); *Nat. Parents of J.B. v. Fla. Dep't of Child. & Fam. Servs.*, 780 So.2d 6, 9 (Fla. 2001) ("A presumption that juvenile proceedings be closed to the public is consistent with the history and tradition of the juvenile justice system and furthers the sound and practical purposes of that system."); *Briggman v. Burton*, No. 5:15CV00076, 2016 WL 5462840, at *5 (W.D. Va. Sept. 27, 2016) (recognizing that juvenile proceedings have been historically closed to the public in both criminal and non-criminal cases).

Against this long line of precedent, Plaintiff's Complaint mentions centuries-old proceedings involving children, but only at a high level of generality. (*See* D.E. 13 at 11-12 (stating that chancery courts were "*generally* open to the public" and habeas proceedings were "*generally* resolved in open court"). Even then, Plaintiff concedes that

15

special solicitude was shown to children's privacy. (*Id.* at 11 (noting children were permitted to testify privately)). As for this country's history, Plaintiff mentions only three isolated, dependency-like cases that proceeded in open court. (*See id.* at 12).

By contrast, there is a well-established American tradition of keeping the details of abused minors confidential. Indeed, "[i]t would misrepresent the historical record to state that there is an 'unbroken, uncontradicted history' of open proceedings in cases involving the sexual abuse of minors." *Globe Newspaper*, 457 U.S. at 614 (Burger, J., dissenting) (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 556 (1980)). In 1886, for example, the Texas Court of Appeals upheld the removal of the public so a minor witness could testify about the rape of her minor friend. *Grimmett v. State*, 2 S.W. 631, 633-34 (Tex. App. 1886). Similarly, in 1913, the Ninth Circuit upheld the exclusion of the public from the courtroom during the testimony of "a female person under the age of 16 years." *Reagan v. United States*, 202 F. 488, 489-90 (9th Cir. 1913). And in 1935, the Supreme Court of Arkansas likewise had no qualms about a criminal court excluding the public "during the examination of the little girl who was the victim of appellant's fiendish passions." *Hogan v. State*, 86 S.W.2d 931, 931-32 (Ark. 1935). The list goes on.[6]

---

[6] *See Moore v. State*, 151 Ga. 648, 108 S.E. 47, 52-53 (1921) (upholding exclusion of public during testimony of a victim who was "16 years of age"); *State v. Damm*, 252 N.W. 7, 10 (S.D. 1933) (upholding exclusion of public from rape testimony of a thirteen-year-old child), *aff'd on rehearing*, 266 N.W. 667 (1936); *United States v. Geise*, 158 F. Supp. 821, 824 (D. Alaska) (excluding public from testimony of an eight-year-old rape victim and collecting sources showing that the exclusion of "spectators in a prosecution for statutory rape in which the prosecuting witness is of tender age has been held proper"), *aff'd*, 262 F.2d 151 (9th Cir. 1958).

16

Moreover, as Plaintiff has now admitted, sexual abuse of minors remains an unfortunate but significant part of A/N/D proceedings today. (D.E. 13 at 4). Thus, the historical record does not demonstrate the sort of "unbroken, uncontradicted" blanket openness in A/N/D proceedings that would support a third party's unfettered First Amendment right to public access. *See Richmond Newspapers*, 448 U.S. at 556.[7] To the contrary, some historical examples closely resemble today's juvenile proceedings as they, too, involved sexual assaults of parents upon their children. *See, e.g.*, *Damm*, 252 N.W. at 10.

Further, as again Plaintiff concedes, modern A/N/D proceedings did not arise until near the turn of the twentieth century. (D.E. 13 at 12). Again, these more recent proceedings do not support a historical tradition of openness. By 1939, at least six juvenile courts did not have statutorily presumed public access. (*See id.* at 13-14). And those states were the forerunners of a national trend that turned toward closing such hearings. (*Id.*). The supposed historical foundations of open access to juvenile proceedings are neither as long-standing nor as inviolable as Plaintiff's Complaint would make them out to be.

---

[7] Plaintiff's Complaint cites to *Globe Newspaper*, but there the Supreme Court was addressing the elevated preference for public access to *criminal* cases. *See* 457 U.S. at 605. The Supreme Court has never shown that same concern for civil cases. *See Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 844 (9th Cir. 2020) (O'Scannlain, J., dissenting) ("The Supreme Court has discussed only a qualified right of access to certain criminal judicial proceedings and has never recognized a right of public access outside of that context."). Thus, the fact that even *criminal* proceedings were frequently closed when juvenile-sexual-assault victims testified provides significant historical support for the proposition that *civil* ones like A/N/D proceedings can be closed without offending the First Amendment.

But the biggest flaw in Plaintiff's historical approach is to completely discount delinquency proceedings. America's history of closing juvenile delinquency hearings is nearly undisputed. *See J.B.*, 780 So.2d at 9 ("It is a hallmark of our juvenile justice system in the United States that virtually from its inception at the end of the last century its proceedings have been conducted outside of the public's full gaze and the youths brought before our juvenile courts have been shielded from publicity." (quoting *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 107 (1979) (Rehnquist, J., concurring))). Historical sources support this conclusion: "In juvenile proceedings, however, privacy has 'typically been among the few unchallenged keynotes.'" *See Publicity in the Juvenile Court*, 3 U. Rich. L. Rev. 348, 348 (1969) (quoting Geis, *Publicity and Juvenile Court Proceedings*, 30 Rocky Mt. L. Rev. 101, 102 (1958)).

Nor can Plaintiff overlook the fact that the historical reasons for closing juvenile delinquency proceedings apply with greater strength to juvenile A/N/D proceedings. *See id.*; *San Bernardino*, 232 Cal. App. 3d at 200. As other courts have done, this Court should recognize such a helpful comparison.

Specifically, delinquency cases are criminal proceedings. According to the Supreme Court, there are numerous reasons for criminal proceedings to remain open: to assure all concerned that "proceedings were conducted fairly," to discourage perjury and misconduct of participants, to provide "significant community therapeutic value," and to provide "an outlet for community concern, hostility, and emotion." *See Richmond Newspapers, Inc.*, 448 U.S. at 556. These "social values" are implicated just as much when

18

a child commits a crime as when an adult does. *San Bernardino*, 232 Cal. App. 3d at 200-01, 208. Yet from the conception of the juvenile system, America has chosen to subordinate those values to the goal of achieving a positive outcome for youth offenders, recognizing "that publicity, with its attendant stigma, generally impedes integration of a youth into the community." *Id.* at 198.

If children who have been charged with crimes receive such special privacy protection, even more should extend to children who are victims and forced into A/N/D proceedings through no fault of their own. *See J.B.*, 780 So.2d at 9 (recognizing that juvenile proceedings are "fundamentally different from an adult criminal trial" because the "foundation of the juvenile system is to 'preserv[e] and promot[e] the welfare of the child,'" (quoting *Schall v. Martin*, 467 U.S. 253, 263 (1984))). Like "delinquency proceedings, the dependency proceeding is intended to be rehabilitative—not punitive." *San Bernardino*, 232 Cal. App. 3d at 200. Rehabilitation is further aided in both cases by "protecting the minor victim from further trauma and embarrassment which might result when the child is compelled to testify in public." *Id.* at 200. "[P]rivate hearings in dependency proceedings assist in that process no less so than in delinquency proceedings." *Id.*; *see also J.B.*, 780 So.2d at 9/

The long history of keeping information confidential in juvenile proceedings, in addition to the historical record more generally, demonstrates that the First Amendment right to public access does not apply to A/N/D proceedings. In other words, Plaintiff's theory fails the test of experience.

19

Plaintiff's theory also flounders under the logic test.

To begin with, confidentiality in A/N/D proceedings advances critical policy goals. There "can be little doubt that the embarrassment, emotional trauma and additional stress placed on the minor by public proceedings and the publicity engendered by public proceedings may well interfere with the rehabilitation and reunification of the family." *San Bernardino*, 232 Cal. App. 3d at 200; *see also* David Finkelhar & Charles Putnam, *Protecting the Privacy of Child Crime Victims*, 17(2) APRI (2004) (explaining that publicizing abuse causes victims embarrassment and shame, which are sources of trauma, and can lead to increased risk of bullying and longer recoveries). Even "[c]hildren who must face their peers in school might be subject to special pressures" if a matter is made public. *N.J. Div. of Youth & Fam. Serv. v. J.B.*, 576 A.2d 261, 269 (N.J. 1990). States have a legitimate interest "in protecting child victims from undue trauma and humiliation, facilitating the rehabilitation of families, and encouraging people to report child abuse and neglect by keeping their identities confidential." *Tower*, 167 F. Supp. 2d at 405 (citations omitted). And states have an "overriding interest in, among other things, protecting the child from stigma, publicity, and embarrassment and promoting rehabilitation." *J.B*, 780 So.2d at 9.

Plaintiff's allegations do not outweigh this "overriding interest." *Id.* For example, while A/N/D proceedings involve adjudications without a jury, juvenile delinquency cases do not involve juries either. *See United States v. Duboise*, 604 F.2d 648, 648 (10th Cir. 1979) ("The Juvenile Delinquency Act does not, of course, permit trial by a jury."). But,

20

despite serious consequences being adjudicated in juvenile delinquency cases, that does not overcome the tradition of keeping those proceedings closed. The same rationale applies even more forcefully in A/N/D proceedings, where there are not only serious consequences but also significant hardship and trauma on innocent children. The least that can be done for those children is to extend the same protections they would receive if instead of being a victim they were a delinquent.

Plaintiff's other theories invoke the same abstract social values that the Supreme Court first identified as applying to criminal cases in *Richmond Newspapers*. 448 U.S. at 556. And true, public exposure can in certain circumstances improve court functions and minimize bias. But once again, each of these general arguments for why A/N/D proceedings should be public applies equally well to juvenile delinquency proceedings, or any other court proceeding for that matter. And none of them take into account the special considerations that come into play when a child's life and rehabilitation are on the line.

Moreover, in conducting the logic test, the Supreme Court has instructed courts to examine "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enter.*, 478 U.S. at 8-9. "[W]hile the [juvenile] system has been criticized for its failings, at no time has the Supreme Court indicated that one of the reasons for its deficiencies is the lack of open proceedings. To the contrary the court has criticized the system for not maintaining adequately the confidentiality purportedly promised by the juvenile system." *San Bernardino*, 232 Cal. App. 3d at 204.

As a result, courts that have weighed the general benefits Plaintiff identifies against the specific harm in having an innocent child's most sensitive details publicized for the world have repeatedly found that logic weighs against public access. *See, e.g.*, *Ky. Press*, 355 F. Supp. 2d at 864 ("Rather than playing a significant positive role in the functioning of juvenile proceedings, opening juvenile proceedings would frustrate the purpose of juvenile court." (cleaned up)); *San Bernardino*, 232 Cal. App. 3d at 204-05 ("With the welfare of minors at stake, we are reluctant to impose the strict standard for closure required for a First Amendment right unless compelled to do so by the United States Supreme Court."); *J.B.*, 780 So.2d at 9 ("A presumption that juvenile proceedings be closed to the public . . . furthers the sound and practical purposes of that system."); *see also Tower*, 167 F. Supp. 2d at 405 (noting that courts "have found that the balance tipped in favor of denying public access when publicity would jeopardize either children caught up in the dispute or the child protective process itself"). That logic is persuasive. This Court should adopt it as well.

Finally, there is an independent counterbalance in A/N/D proceedings that is not present in criminal ones. Specifically, every A/N/D proceeding includes a GAL, who has no bias in the case but is appointed solely to watch over the child's best interest. There is no such non-interested party in criminal prosecutions. The appointment of an unbiased third party further mitigates against Plaintiff's concerns of an unchecked system.

For all these reasons, Plaintiff has failed to satisfy the logic test as well.

22

As an additional consideration, Plaintiff's theory about third parties' constitutional right to access A/N/D proceedings is inconsistent with the First Amendment's original meaning. History does not show "that the framers were concerned with assuring press access" when they designed the First Amendment. Timothy B. Dyk, *Newsgathering, Press Access, and the First Amendment*, 44 Stan. L. Rev. 927, 933 (1992); *see also* Lillian R. BeVier, *An Informed Public, an Informing Press: The Search for a Constitutional Principle*, 68 Cal. L. Rev. 482, 500 (1980). To the contrary, public access "traditionally has not been included in our notions of free expression." Amy Jordan, *The Right of Access: Is There A Better Fit Than the First Amendment?*, 57 Vand. L. Rev. 1349, 1358 (2004). The Supreme Court has instructed that the "object of construction, applied to a constitution, is to give effect to the intent of its framers, and of the people in adopting it." *Lake Cnty. v. Rollins*, 130 U.S. 662, 670 (1889). In accordance with that instruction, this Court should not extend an ahistorical concept of public access when no "binding precedent" requires it. *United States v. Rife*, 33 F.4th 838, 843-44 (6th Cir. 2022) (refusing to extend the ahistorical substantial effects test when Supreme Court jurisprudence did not require it).

* * *

Because Plaintiff lacks a First Amendment right to access A/N/D proceedings, neither of Plaintiff's claims can succeed, and the Complaint should be dismissed on the merits.

## CONCLUSION

For all of these reasons, the motion to dismiss should be granted.

This the 13th day of February, 2025.

FOX ROTHSCHILD LLP

/s/ Kip D. Nelson
Kip D. Nelson
N.C. Bar No. 43848
knelson@foxrothschild.com
Sean T. Placey
N.C. Bar No. 56683
splacey@foxrothschild.com
230 N. Elm Street, Suite 1200
Greensboro, NC 27401
Telephone: (336) 378-5200

Nathan W. Wilson
N.C. Bar No. 58248
nwilson@foxrothschild.com
434 Fayetteville Street, Suite 2800
Post Office Box 27525 (27611)
Raleigh, NC 27601
Telephone: (919) 755-8700

*Attorneys for Proposed Intervenor-Defendant*

24

## <u>CERTIFICATE OF WORD COUNT</u>

In accordance with LR 7.3(d), the undersigned hereby certifies that the counted portions of the foregoing brief are less than 6,250 words, as reported by the word count feature of the word processing software.

This 13th day of February, 2025.

/s/ Kip D. Nelson
Kip D. Nelson